BELTON HARRIS v. THE STATE.

No. 3389. Decided January 20, 1915.

**1.—Murder—Continuance—Practice on Appeal.**

The overruling of an application for a continuance need not be considered on appeal, where the judgment is reversed and the cause remanded for other reasons.

**2.—Same—Objections to Charge.**

Where, upon trial of murder, defendant's attorney requested the court to give him the charge that he might urge exceptions, which the court declined to do, the same was reversible error, where the charge of the court was erroneous.

**3.—Same—Rule Stated.**

The statute guarantees to the accused the right to inspect the court's charge and to urge exceptions thereto before the same is read to the jury.

**4.—Same—Plea of Guilty—Charge of Court.**

Where, upon trial of murder, the defendant pleaded guilty and evidence was introduced among other things on the question of the defendant's sanity at the time of the commission of the offense, and the court submitted the case to the jury on defendant's plea of guilty, and among other things instructed the jury to find the defendant guilty of murder, and also instructed the jury unequivocally that the defendant was sane, over the exceptions of the defendant, the same was reversible error, the question of insanity being an issue.

**5.—Same—Rule Stated—Province of the Jury.**

Wherever there is a contested issue before a jury in a criminal prosecution, it is the province of the jury to pass upon the weight of the testimony and the credibility of the witnesses, and this is not different under a plea of guilty from the case where the plea is not guilty.

**6.—Same—Rule Stated—Practice.**

It has been further held that the trial is precisely the same under a plea of guilty as under a plea of not guilty under the statute which requires evidence to be introduced. Following Crow v. State, 6 Texas, 334, and other cases.

**7.—Same—Rule Stated—Insanity.**

The fact that the court thought the defendant was sufficiently sane to admit the plea of guilty did not take away from the jury the right to pass upon his sanity under the facts submitted to them.

**8.—Same—Rule Stated—Plea of Guilty.**

The law only authorizes a conviction where guilt is shown; if there be no legal guilt, a conviction could not be sustained, although the defendant entered a plea of guilty.

**9.—Same—Rule Stated—Sanity—Plea of Guilty—Burden of Proof.**

On the question of sanity, under a plea of guilty, the statute changes the rule and places the burden of proof on the State, and the question of the defendant's sanity is an issue required to be shown before conviction can be had. Following Burton v. State, 33 Texas Crim. Rep., 138, and other cases.

**10.—Same—Rule Stated—Sanity—Burden of Proof.**

The law is sufficiently humane to change the burden on the question of sanity where the accused pleads guilty to an infamous crime, and the theory of the law is that no citizen in his right mind would plead guilty to crime, and the entry of the plea of guilty shifts the burden of proof to the State.

**11.—Same—Rule Stated—Insanity—Practice.**

Where the plea of guilty is entered, the statute requires that evidence shall be introduced before the jury, and that no man shall be tried for felony without a jury and this he can not waive, and where the issue of insanity is suggested, this goes with the other facts of the case to be decided by the jury, and the court can not take it away from them.

**12.—Same—Case Stated—Charge of Court.**

Where, upon trial of murder, the issue of insanity of defendant was involved, the court should not have taken away this important issue from the jury and decide it for them, nor should he have instructed the jury that the defendant was sane, and such a charge was reversible error.

**13.—Same—Self-defense—Charge of Court.**

See opinion where the writer thereof is of the opinion that there may be sufficient evidence which required the court to submit the issue of self-defense.

Appeal from the District Court of Henderson. Tried below before the Hon. John S. Prince.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Ernest A. Landman,* for appellant.—On question of the court's charge that defendant was sane: Hughes v. State, 23 S. W. Rep., 891; O'Brien v. State, 35 S. W. Rep., 666; Sanders v. State, 18 Texas Crim. App., 372.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, Judge.—The jury awarded appellant the death penalty under a plea of guilty of homicide.

The evidence shows appellant killed his wife. Their lives had been not of the most comfortable sort during their marital relation. Appellant had been from his infancy affected with an uncontrollable temper, giving his family, when a boy, great trouble, so much so that they called in outsiders some time to try to help control him. When not in these passions of anger and rage he seems to have been affectionate with his family, and in fact it may be stated that he was a man who otherwise got along well with those with whom he came in contact. The conclusion may be reached from the testimony that he was at times harsh, if not cruel, with his wife, and jealous of her without cause; it seemed to have preyed upon his mind. He was continually looking for tracks about their residence, and reported that he had found tracks, and accused his wife of infidelity, and it would seem from the testimony that this was all without warrant. About a month prior to the homicide his wife separated from him and went to another home. On three or four occasions he visited her after this separation, seeking to induce her to return and live with him, promising that he never would mistreat her again, avowing his love and affection for her and the children. She steadily refused, however, to return. They had five children, all of whom accompanied the mother in the separation. On the evening of the homicide, passing the field where his wife was at work, her children being present, he hitched his horse, went into the field where his wife was and undertook to persuade her to return and live with him, avowing all sorts of affection, promising not to mistreat her in the future. To this she turned the deaf ear. Then he told her he was going to apply to the court for a division of the children, stating that the court would award him some of the children. While in the field he approached the younger two children, picking them up, one under each arm, and left in the direction of his horse. His wife, who was chopping cotton, followed him with a hoe in her hand. In going across the field for some reason, either by the effect of the wind or stumbling, he lost his hat. He set the children down to get the hat. About this time the wife with the hoe was in close proximity and he left and went across the fence where his horse was and secured a gun from the saddle and returned and told her that she must let him alone. Without going into detail he left, went back and got his horse and started down the road. The road was just outside and near the field. His wife followed along on the inside of the field for some distance when he got down and took his gun and shot his wife, killing her. As to the immediate facts there is quite a lot of testimony, and as usual the testimony is variant. There was no question as to the fact that deceased had the hoe in her left hand as she was going down the fence. Some of the testimony indicates that her right hand was under her clothing on her breast. The State took issue with this latter fact. A witness, Mrs. Hunter, who dressed the body

of deceased, shows that the wounds in the body were in the breast, some of the shot also striking the left arm; several of them striking the right hand, shooting off two fingers, splitting another, and shooting off one of the knuckle joints. This testimony seems not to have been controverted. This testimony shows that the right hand was on the breast at the time of the shot, there being but one shot fired. He got on his horse after this and rode away. There is quite a lot of testimony introduced on the issue of insanity. There is some indication that the defendant first entered a plea of not guilty, but this is not shown by the judgment or any certificate of the judge, but it is shown that he entered a plea of guilty, and the judge certifies that he had a commission of doctors to examine into the sanity of appellant, and that two of these physicians made a report. The report of these physicians is here copied:

"We, your commissioners, appointed to pass upon the sanity of the above style case and beg leave to report that after examining fifteen witnesses and the defendant, Belton Harris, we find the said defendant, Belton Harris, knows right from wrong, although we believe that the said Belton Harris is mentally defective as result of not being able to control his temper in his early days. We believe he was born mentally weak and the lack of proper training and control developed uncontrollable temper which became an irresistible impulse to accomplish his ends regardless of consequences.

"Percy Larkin, M. D.,<br>
"J. K. Webster, M. D.,<br>
"Commissioners."

The judge files a statement officially signed that he appointed these two physicians in connection with Dr. W. A. French, and he received their report, and in addition heard the testimony of one of the physicians touching the sanity of the defendant, and having talked with defendant in person, etc., it appeared to him the defendant was sane, and that he is uninfluenced by any consideration or fear in making his plea of guilty, or by any persuasion or by any delusive hope of pardon, prompting him to confess his guilt, therefore the court finds that said defendant is sane, and permitted said defendant to enter his plea of guilty, and accepted the same. There is a mass of testimony not confined to the defendant's witnesses, to the effect that appellant was from his early boyhood afflicted with an ungovernable temper, and that when enraged nothing could be done with him. This seems not to have been minimized in his advancing years. He also developed a tendency to secure patents for inventions, among others, he stated that he had invented perpetual motion, but that he could not control the speed of his motion, and it was continually giving him trouble, and he had remodeled and tried again. That this played upon his mind until he came a bore to those with whom he talked in regard to this matter, and he recognized the fact that it was worrying him so that he could not sleep, and it was preying upon his mind, and said he would quit and do something

Vol. 76 Crim.-9

else and get his mind away from it, and believed he was going crazy. But a cessation of these matters did not seem to last for any length of time. It seems also that the question of religion disturbed his mind greatly, and many things of this sort, without going into detail, were developed on the trial. One of the doctors was placed upon the stand by the State and the other by the defendant. Their reasoning on the witness stand amplified their report. They both seemed to arrive at practically the same conclusion, that he knew right from wrong, but on account of mental defect and his temper and matters of that sort, that he was afflicted with irresistible and uncontrollable impulse to do anything that he wanted to do and without regard to consequences.

When the case was called for trial an application was made for a continuance upon matters informal and defective, and may be not further discussed in view of the disposition of the case. However, upon another trial these witnesses may be obtained. Some of the absent testimony bore upon the question of insanity; some bore upon the temper of his wife, and some bore on the question of self-defense. When the testimony had ceased appellant, through his attorney, requested the court to give him the charge that he might urge exceptions to it if he saw proper. This the court promptly declined, stating to counsel that he could reserve any exceptions and write any charges, but that he would not permit him to read his charge. Exception was taken to this. This was error. However, if there is no material error in the charge the error might not call for a reversal. The statute guarantees to the accused the right to inspect the charge and urge exceptions to it before being read to the jury, and not only grants defendant the privilege or right to do so but makes it almost imperative that he do so in order to take advantage of real or supposed defects in the charge. The appellant subsequently filed some exceptions to the charge, and also requested quite a number of charges, all of which were refused. The court submitted the case to the jury on his plea of guilty, and, among other things, instructed the jury to find the defendant guilty of murder, and also instructed the jury, in unequivocal terms, that defendant was sane. The exception filed by the defendant covered the sanity question, and special requested instructions, which were refused, also covered the question of sanity in such way as they should have been given by the court. The charge, although given in a case where the plea of guilty is entered, was erroneous in instructing the jury under the facts of this case that defendant was sane. It was the principal issue urged by the defendant before the jury and by the testimony in the record. Wherever there is a contested issue before a jury in a criminal prosecution, it is the province of the jury to pass upon the weight of the testimony and the credibility of the witnesses, and this is not different under a plea of guilty from the case where the plea is not guilty. The statute requires that when the defendant insists upon pleading guilty certain things must be ascertained by the court before the plea of guilty will be entertained. The statute further provides that when the plea is entered testimony shall be introduced to enable the jury to fix the pun-

ishment. The court may determine perhaps in the first instance to his satisfaction that the statute has been complied with before receiving the plea, but when the facts get before the jury the jury passes upon the weight of the testimony and the credibility of the witnesses. It has been held by the decisions that this statute is mandatory, and instead of being for the benefit of the defendant it is more especially designed to protect the interest of the State by preventing aggravated cases of crime from being compromised by the assessment of minimum punishment. It also has been held that the provisions of the statute should be fully observed and administered. It has been further held that the trial is precisely the same under a plea of guilty as under a plea of not guilty, under the statute which requires evidence be submitted. Crow v. State, 6 Texas, 334; Martin v. State, 36 Texas Crim. Rep., 632. The fact that the court thought the defendant was sufficiently sane to admit the plea of guilty did not take away from the jury the right to pass upon his sanity under the facts submitted to them. In the Crow case, supra, as we understand it, the law is as therein stated, Judge Lipscomb in that opinion uses this language: "It is believed to amount to nothing more than an acknowledgment of the facts, and whether such facts constitute an offense at law is left open to be decided by the court." If the defendant pleads guilty and the facts should develop that he is not guilty, but acted purely in self-defense it would be the duty of the court to see that no conviction was had, although a plea of guilty was entered. Our law only authorizes a conviction where guilt is shown. If there be no legal guilt, a conviction could not be sustained, although the defendant entered a plea of guilty. On the question of sanity under plea of guilty our statute changes the rule and places the burden of proof on the State. In Sanders v. State, 18 Texas Crim. App., 372, the rule was declared, that ordinarily the sanity of the defendant is presumed until the contrary is made to appear, but in prosecutions for crime if it be proposed by the accused to plead guilty the reverse of this presumption is the rule, and the law assumes until it is made otherwise to appear that the accused is insane or has been improperly influenced. On a trial in a criminal case when defendant pleads guilty, the question of his sanity is an issue required to be shown before conviction can be had, and the evidence upon that issue should be introduced in connection with the entering of the plea of guilty. Burton v. State, 33 Texas Crim. Rep., 138. Our law is sufficiently humane to change the burden on the sanity question where a citizen of Texas pleads guilty to an infamous crime. The theory of the law is that no citizen in his right mind would plead guilty to crime. The entering of the plea shifts the burden to the State, and in order to secure the conviction of the defendant the State must meet that issue by burden of proof. The judge is not the arbiter on the facts. The statute requires that evidence shall be introduced before the jury, and that no man shall be tried in a felony without a jury. This he can not waive. It further requires that the facts be introduced, and where the issue of insanity is suggested, this goes with the other facts of the case to be decided by

the jury.   The court can not take it away from them, and if the jury should conclude that the party is insane, then their verdict shall be rendered accordingly.   The evidence in this particular case in regard to insanity covers all phases of it, whether the insanity was at the time of the homicide or subsequently.   It covers his life.   The charge must submit insanity at the time of killing.   The court should not have taken away this important issue from the jury and decided it for them, nor should he have instructed the jury that the defendant was sane. This was the main contested issue in the statement of facts, which covers over one hundred and fifty pages.   The jury may have thought, or they may not have thought that he was insane.   They were further instructed that he was guilty of murder.   If he was insane, he was not guilty of murder; in fact, he was not guilty of anything criminally.   The laws of Texas do not punish irresponsible insanity.   The writer is further of the opinion that there may be sufficient evidence in this record to have required the court to submit the issue of self-defense, but the witnesses who are absent may be obtained upon another trial, and if the witnesses swear as appellant expects them to swear, that deceased was armed with a pistol at the time of the shooting, then the issue would become rather important.   She was following him on the inside of the fence; he on the outside; she had a hoe in her left hand, and her right hand under the clothing of her breast.   The wounds on the hand demonstrates this position.   If the absent witness would swear that she had a pistol at the time, then the conditions of the hand would become important from the standpoint of apparent danger.   However reprehensible we may think the conduct of a man is in killing a woman, still if the danger was such that it imperiled his life, it would not deprive him of the right of self-defense.   However, that question is not raised in the exceptions to the charge nor by special charges, but this is thrown out by way of suggestion, that if the evidence is such as the application for continuance indicates, and in connection with the physical facts, it may call for a charge on self-defense.

Believing the court was in error in the matters indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*