## CHARLIE EDWARDS V. THE STATE.

No. 19431.   Delivered February 16, 1938.
Rehearing denied March 23, 1398.

The opinion states the case.

*Carlos B. Masterson* and *F. Cleveland Davis,* both of Angleton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The offense charged is murder, and the punishment fixed at death.

Charlie Edwards, a negro, was charged with the unlawful killing of Annie Edwards, his divorced wife. It appears from the record that the appellant in person entered a plea of guilty to the indictment upon his arraignment in the trial court, and that the court received such plea at that time. In the course of the trial the appellant introduced certain testimony relative to the condition of his mind at the time of the killing, as well as before such time, and after the appellant had himself taken the stand and testified the trial judge withdrew appellant's plea of

guilty from the jury, and, upon appellant's refusal to enter a plea of not guilty, the court entered such plea for him, and proceeded to charge the jury, among other things, relative to the insanity of the appellant at the time of the commission of the alleged offense. We quote from appellant's own testimony:

"I don't know sir exactly what happened on the 10th of May of this year at the time she was killed, because I wasn't at myself; I had some kind of spell or another. By 'spell,' I mean some kind of a crazy outfit; I had that kind of a spell twice, but not twice that day; it had been a pretty good while back since I had had one of them spells; it had been up in the fall when I had the spell before, along up in the cold time. I don't know what's the cause of them spells, but I had been having them before I left my home, I think; somebody did something to me years ago; gave me some kind of stuff to drink, some people down in the bottom did that, and they claimed at that time that they put some kind of dust on me. Really I don't know sir who put that dust on me, and really I don't know where they put it on me; I did not know the name of the party that put the dust on me, but it was the kind of a stuff that would make a man go crazy like; they slipped the dust on my head, and I had kind of a burning spell; I don't know who did that; I ran; I got away from there, and that is all that I remember about that; I don't know when that was; that was a hoodoo man that put the dust on me; he was a fellow called Jones. Jones did not put any of that dust on me later, and he did not put any of it on me at the time I shot my wife. I had a spell at the time I killed my wife; I think I must have had something on me then, because I wasn't at myself when I done it, I know I wasn't."

The appellant placed Adam McCoy on the stand, and he gave some detailed testimony relative to the peculiar actions of appellant while confined in jail, and finally concluded by saying, "All I can say is I guess he ain't got all his wits."

Appellant also placed his and the deceased's daughter, Julia Harris, on the stand, and she testified, among other things, "And at times he [the appellant] acted like he was in his real mind, and sometimes he did not, but kind of acted like some one that's crazy."

Upon the presentation of such above recounted testimony the court withdrew the plea of guilty theretofore entered by appellant, and, upon appellant's refusal to do so, the court entered a plea of not guilty for him. As demanded by such testimony, the court proceeded to incorporate in his charge, among

other things, a charge on insanity at the time of the commission of the offense.

Such charge was properly and timely objected to upon the part of appellant's attorneys, and is also made the basis of his bill of exception No. 1. The court was correct in his procedure herein relative to such plea, and doubtless acted with the decisions of this Court before him at such time. In Thompson v. State, 77 S. W. (2d) 538, such cause was reversed on account of the trial court, in a case of similar facts, failing to do just what this trial court actually did. In Yantis v. State, 95 Texas Crim. Rep. 541, 255 S. W. 180, Judge LATTIMORE said: "It was proper for the learned trial judge, when appellant had entered a plea of guilty, if evidence be introduced tending to show him insane at the time of the commission of the offense, to have the plea of guilty withdrawn and a plea of not guilty entered, preferably by appellant or his counsel; but, if they would not, then by the court for appellant." To the same effect is Taylor v. State, 88 Texas Crim. Rep. 470, 227 S. W. 679; Harris v. State, 76 Texas Crim. Rep. 126, 172 S. W. 975; Johnson v. State, 120 Texas Crim. Rep. 368, 48 S. W. (2d) 274. The trial court's action in such matter was correct.

Appellant's bill of exception No. 2 complains, in the main, of the acts set forth in bill No. 1, with the added proposition that he was deprived of his privilege of introducing the testimony above quoted in what we have said relative to bill No. 1, in that he desired to use such testimony only for the purpose of showing appellant's impaired mentality and in mitigation of the penalty, and did not expect nor intend to utilize the same on a plea of complete insanity. The court qualified such bill and therein disposes of same in a manner satisfactory to us, as follows:

"When the defendant was arraigned and when he entered his plea to the jury to an indictment charging murder with malice aforethought, he plead guilty and the court accepted his plea. When the defendant took the stand as a witness, his testimony if true clearly raised an issue of insanity, which the court felt should be submitted to the jury. The court could not in charging the jury on a plea of guilty in this case tell the jury that it plainly appeared to the court that the defendant was sane in view of the testimony of the defendant as reflected by the record. It being a question of fact in the case which the court could not under the law pass upon, the court felt that submitting this question of fact to the jury gave the defendant the right to urge insanity as a defense, which he would not have had on his plea of guilty, and did not in any way take from

him the right to urge his defective mental condition, if it existed, by way of mitigation."

What we have said heretofore herein, in our opinion, is also conclusive relative to bill of exception No. 3, which is overruled.

In bill of exception No. 4 appellant complains because the court failed to charge upon the law of circumstantial evidence in this cause, it being appellant's contention that no person saw appellant fire the first shot at the deceased, and that the State had to rely upon circumstantial evidence to show who fired such first shot. The appellant himself testified: "On this day that I killed my wife, I had not seen her go to my daughter's house, and I was not laying in wait for her with a shotgun and did not kill her when she came out of my daughter's house; I shot her, but I didn't know I killed her. I did not intend to kill her when I shot her; I just intended to pepper her; I don't know how come me to shoot her the second time. Boss, I guess I must have knowed it when I shot her the first time, but really some things I know and some I doesn't."

Eugene Evans saw the defendant fire the second shot into the deceased as she lay upon the ground within some two or three feet of witness, and she was alive at that time, because she appealed to Evans for help. Deceased's daughter also saw appellant fire the second shot, which was the shot that doubtless took her life, as Evans testified: "When he shot her the second time, she laid still then and did not move any more." In our opinion the facts are so interwoven and cogent that there is direct and positive testimony relative to this killing and the firing of such shots, and the court's failure to charge on circumstantial evidence was justified, and this bill is also overruled.

It appears to us that this appellant's rights have been properly and zealously guarded by the learned judge who has given this appellant all the rights guaranteed him under the law, and it is our duty to affirm this judgment, and it is accordingly affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Because of the extreme penalty we have quite carefully re-examined the entire record on appeal. Our opinion remains unchanged that the very cautious trial judge adopted the proper course in withdrawing the appellant's plea of guilty and entering for him a plea of not guilty, and in con-

nection with other issues also submitting to the jury the question of appellant's sanity. Any other course would have been contrary to the procedure approved as proper in the cases cited in our original opinion.

Deceased had secured a divorce from appellant and was receiving the attention of another man, or appellant thought so, at any rate. His conduct towards her had been such that he had been placed under a peace bond, and when warned of the probable result of violating the terms of said bond had made threats to kill both deceased and the man. These threats were consummated so far as they concerned his divorced wife.

We discover no good reason why this court should interfere with the verdict of the jury and the judgment of the trial court thereunder.

The motion for rehearing is overruled.