COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

RUTH ANN
MARTIN,                                        )                       No. 08-02-00144-CR

                                                                              )

Appellant,                          )                                Appeal from

                                                                              )     

v.                                                                           )                 Criminal District Court No. 5

                                                                              )

THE STATE
OF TEXAS,                                     )                     of Dallas County, Texas

                                                                              )

Appellee.                           )                        (TC# F-0175501-PL)

 

O
P I N I O N

 

Ruth
Ann Martin appeals her conviction and twenty-year sentence for the offense of
injury to a child.  By three issues, she
contends the trial court abused its discretion by not rejecting her plea of guilty,
that the indictment is fundamentally defective, and
ineffective assistance of counsel.   We
reverse and remand.

I








Martin
awoke to find her pre-teen daughter Heather had died in bed during the
night.  Appellant was charged with injury
to a child, a second-degree felony. 
After appropriate admonishments by the trial court, appellant pled guilty
to the indictment with an open plea agreement. 
The indictment alleged appellant recklessly caused serious bodily injury
to Heather Podloger, a child 14 years or younger, by
leaving the child (her daughter), unsupervised by an adult and leaving morphine
within access to the child.  The
indictment also alleged appellant caused serious bodily injury to the child in
that she failed to provide adequate medical care, knowing the child was
vomiting and crying, at a time appellant had the legal duty to act, to-wit: Athe defendant was the parent of the
complainant, and the defendant had assumed care, custody and control of the
complaint . . . .@  Appellant made a judicial confession tracking
the indictment, verbatim.

Appellant
testified she was thirty-three years old at the trial.  She had been on probation for nine years
after 1993 convictions for four drug offenses. 
She also had two 1991 obscenity charges resulting from the sale of a video
at an adult bookstore where she worked. 
She was never charged with a probation violation.  She considered herself a recovering drug
addict.  She also admitted to once trying
the morphine in question, and that it made her sick.  Her husband acquired the morphine from his
sister after his mother died of cancer. 
The sister-in-law wanted appellant=s
husband to sell the drug to raise money to help pay for the cremation of the
mother-in-law.  The morphine was left in
the original container, on the  high shelf of the medicine cabinet in
the bathroom.  The container was brown
and looked like an aspirin bottle.  The
container had a screw top, thought to be childproof by appellant.  Appellant told her husband to get rid of
illegal drugs after Heather=s
death, when CPS was coming.  However, it
was only later that the couple learned that Heather had ingested morphine.








Appellant
and her husband left her daughter with her twelve, nearly thirteen, year-old
son, Michael.  The youngest child,
Raymond, age five, was taken to a sitter. 
When appellant and her husband left to go to a sports bar/restaurant to
watch a Mavericks basketball game, Heather had a headache.  The couple had a cell phone and spoke with
the children once.  When they returned,
Heather was asleep in the couple=s
bed.  When awakened, Heather whimpered
that she had a headache, perhaps a migraine, commonly suffered in her
family.  Heather was put in her own bed
and she covered her head with a pillow to block the light.  The couple discussed keeping Heather home the
next day because she might have the flu. 
They went to sleep believing the child was alright.  The next morning Heather was cold.  Vomit came from her mouth.  It was later determined that five undigested
morphine pills were in Heather=s
stomach.

Jennifer
Hood testified appellant was a perfect mother who always cared for her
children.  Appellant=s husband, who was no-billed by the
grand jury, said he brought the morphine into the house.  He indicated they were gone about four hours
and he was the one who brought the morphine into the home.  Appellant=s
mother also testified appellant was a good mother and that she was depressed
and remorseful over her daughter=s
death.  She described appellant as
protective of her children Alike
a mother bear.@

II

In
her first issue, appellant argues that the evidence did not show reckless
conduct but instead showed innocent or, at worst, negligent conduct.  She also argues the penal code provides a
defense to prosecution if there is no evidence on the date prior to the offense
that the defendant was aware of injury to the child.  See Tex.Pen.Code Ann. '
22.04(k)(2)(A)(Vernon 2003).[1]








Appellant
argues the standard for withdrawal of a plea is one of discretion.  She cites Aldrich v. State, 53 S.W.3d
460, 467 (Tex.App.--Dallas 2001), aff=d, Aldrich v. State, 104
S.W.3d 890 (Tex.Crim.App. 2003).  Appellant argues that after a case is taken
under advisement, the decision to permit withdrawal of the plea rests in the
trial court=s sound
discretion.  Abuse of discretion is shown
only when the trial court=s
ruling lies outside the zone of reasonable disagreement.  See id.  The State responds that the trial court did
not abuse its discretion and 
counters with Moon v. State, 572 S.W.2d 681 (Tex.Crim.App. 1978). 
Aldrich actually relies on Moon.  Aldrich, 53 S.W.3d
at 467.  The State also argues the
trial court had no jurisdiction to withdraw a guilty plea on its own motion
after approving a plea bargain agreement. 
See Perkins v. Court of Appeals, 738 S.W.2d
276, 281 (Tex.Crim.App. 1987).  We will address the latter argument below.

The
rule had long been that in any case where evidence is introduced that
reasonably and fairly raises an issue as to the innocence of the accused and
such evidence is not withdrawn, the defendant=s
guilty plea must be withdrawn and a plea of not guilty must be sua sponte entered by the trial
court.  Griffin v. State, 703
S.W.2d 193, 195 (Tex.Crim.App. 1986); see also
Harris v. State, 172 S.W. 975 (Tex.Crim.App.
1915); Edwards v. State 114 S.W.2d 572 (Tex.Crim.App.
1938);  Navarro v. State, 147
S.W.2d 1081 (Tex.Crim.App. 1941); Rayson
v. State, 267 S.W.2d 153 (Tex.Crim.App. 1954); Fite v. State, 290 S.W.2d 897 (Tex.Crim.App. 1956); Richardson v. State, 300 S.W.2d
83 (Tex.Crim.App. 1957); Edworthy
v. State, 371 S.W.2d 563 (Tex.Crim.App. 1963);  Reyna v. State, 434 S.W.2d 362 (Tex.Crim.App. 1968); Swanson v. State, 447 S.W.2d
942 (Tex.Crim.App. 1969); Hayes v. State, 484
S.W.2d 922 (Tex.Crim.App. 1972); Lee v. State, 503
S.W.2d 244 (Tex.Crim.App. 1974); Lewis v. State,
529 S.W.2d 550 (Tex.Crim.App. 1975); Gates v.
State, 543 S.W.2d 360 (Tex.Crim.App. 1976); Woodberry
v. State, 547 S.W.2d 629 (Tex.Crim.App. 1977); Malone
v. State, 548 S.W.2d 908 (Tex.Crim.App. 1977).

This
rule has been recognized and applied even when a jury has been waived and the
plea is before the court without a jury. 
Burks v. State, 165 S.W.2d 460 (Tex.Crim.App.
1942); Gonzales v. State, 480 S.W.2d 663 (Tex.Crim.App.
1972); Faz v. State, 510 S.W.2d 922 (Tex.Crim.App. 1974); Trevino v. State, 519 S.W.2d
864 (Tex.Crim.App. 1975); Cooper v. State, 537
S.W.2d 940 (Tex.Crim.App. 1976); Sanchez v. State,
543 S.W.2d 132 (Tex.Crim.App. 1976).








The
rule required the trial court to sua sponte withdraw a plea of guilty when evidence of
innocence is fairly raised applies even though a defendant makes no effort
during the trial to withdraw his plea of guilty, makes no objection to the
court=s charge
instructing the jury to render a verdict of guilty, and even though the
defendant=s
testimony shows him to be guilty of the offense.  Montalvo v. State, 572 S.W.2d 714, 715‑16
(Tex.Crim.App. 1978); Steele v. State, 22 S.W.3d 550, 553 (Tex.App.‑-Fort
Worth 2000, pet. ref=d). 
The Griffin court observed:

This
rule is a vital safeguard which operates to protect the accused from any
outside pressure which could result in an innocent party being convicted, upon
his own plea of guilty, of a crime he did not commit.  Since a person cannot at any time involuntarily
plead guilty to a crime for which he is accused, the totality of the
circumstances of each case is assessed to assure the voluntary nature of the
plea.  Gates v.
State, 543 S.W.2d 360 (Tex.Crim.App.1976).  However, the rule is clear in our case law
that when the exculpatory evidence is produced by the defendant himself, that
it may be withdrawn by him and a plea of guilty may still be taken upon his own
volition.  See e.g.,
Lincoln v. State, supra; Montalvo
v. State, 572 S.W.2d 714, 715 (Tex.Crim.App.
1978); Varela v. State, 553 S.W.2d 111 (Tex.Crim.App.
1977). 

 

Griffin, 703 S.W.2d at 195.








The
cardinal principle of criminal jurisprudence seeks to convict only the guilty
and not the innocent.  Thus due process
requires proof of every contested fact beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  Notwithstanding, when the Court of Criminal
Appeals was expanded from five to seven members, many of the precedents and
principles cited above were abolished sua sponte by the new court in Moon.  See Moon, 572 S.W.2d
at 690 (Onion, PJ, dissenting). 
As correctly argued by the State, Moon held that a trial court is
not required to withdraw a guilty plea sua sponte and enter a plea of not guilty for a defendant
when the defendant enters a plea of guilty before the court after waiving a
jury, even if evidence is adduced that either makes the defendant=s innocence evident or reasonably and
fairly raises an issue as to guilt.  Id. at 682.  The new high court, in the plurality opinion,
reasoned it was the trial court=s
duty to consider the evidence submitted, and, as the trier
of fact, the court may find appellant guilty of a lesser offense or it may find
the defendant not guilty.  Id.  Therefore, it would serve no valid purpose
for the court to withdraw the guilty plea and enter a not guilty plea when the
defendant enters a plea of guilty before the court after waiving a jury.  Id.

Moon
has progeny:  Beasley v. State,
634 S.W.2d 320, 321 n.1 (Tex.Crim.App. 1982); Solis
v. State, 945 S.W.2d 300, 302‑03 (Tex.App.‑‑Houston
[1st Dist.] 1997, pet. ref=d);
Hinkle v. State, 934 S.W.2d 146, 148‑49 (Tex.App.‑‑San
Antonio 1996, pet. ref=d);
Graves v. State, 803 S.W.2d 342, 346 (Tex.App.‑‑Houston
[14th Dist.] 1990, pet. ref=d);
Coronado v. State, 25 S.W.3d 806, 809 (Tex.App.‑-Waco
2000, pet. ref=d); Brown
v. State, 11 S.W.3d 360, 363 (Tex.App.‑-Houston
[1st Dist.] 2000, pet ref=d).  Aldrich, 104 S.W.3d
at 893.  Such a subsequent
genealogy makes it difficult to question the legitimacy of the Moon
exception to sound precedent requiring only the truly guilty be convicted.  We do not challenge the rationale of Moon;
we analyze its applicability or rather its inapplicability to the case
presented.








Moon=s negation of the rule requiring sua sponte withdrawal
of a guilty plea occurred in the punishment phase of the trial, after the plea
was accepted, and the trial court awaited some
two-and-a-half months for a pre-sentence investigation.  Moon, 572 S.W.2d at 688 (Roberts, J.,
concurring and dissenting)(asserting it was too late
to withdraw plea and that holding of Moon is dicta and advisory
opinion).  Notably, in Moon there
is no mention of a plea agreement and the cause was tried to the court.  See Moon, 572 S.W.2d
at 682.  The case sub judice is inapposite because this is not a trial to the
bench.  Rather, we are presented with a
plea bargain agreement.  And in the
specific situation before us, the State  argues the trial court to be without
jurisdiction to withdraw appellant=s
plea.  See Perkins, 736 S.W.2d at 281.  We
address this latter argument below.

  In any case, in order to trigger the trial
court=s duty to
sua sponte withdraw
a guilty plea, the evidence must do more than merely tend to raise a defensive
issue.  Griffin, 703 S.W.2d at 196. 
Thus, we begin our inquiry at this threshold.  The evidence must Areasonably
and fairly raise the issue.@  Id. 
The purpose of the rule is to ensure that guilty pleas are knowingly and
voluntarily entered.  Id.  The trial court has the sound discretion to
make that determination.  Id. at 197. 
Whether the issue of appellant=s
innocence was reasonably and fairly raised at his trial requires us to consider
whether the trial court abused its discretion. 
Id.  Each case must be
evaluated in light of its unique circumstances and the offense charged.  Id. at 196.

The Penal Code
provides:

 

(c)
A person acts recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. 
The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor=s standpoint.

 

(d)
A person acts with criminal negligence, or is criminally negligent, with
respect to circumstances surrounding his conduct or the result of his conduct
when he ought to be aware of a substantial and unjustifiable risk that the circumstances
exist or the result will occur.  The risk
must be of such a nature and degree that the failure to perceive it constitutes
a gross deviation from the standard of care that an ordinary person would
exercise under all the circumstances as viewed from the actor=s standpoint.

 

Tex.Pen.Code Ann. '
6.03(c)(d)(Vernon 2003).

 








Count
one of the indictment required proof that appellant recklessly caused serious
bodily injury to her daughter, Heather, by leaving her unsupervised by an adult
and leaving morphine within Heather=s
access.  Heather was left with her older
brother, Michael, who was nearly thirteen. 
Appellant checked with CPS, who responded that the two older children
(Michael and Heather) were old enough that appellant could be gone for a
certain amount of hours, leaving Heather without adult supervision.  The youngest son, Raymond, who was five, was
taken to a sitter.

Appellant
spoke with Heather by cell phone while the couple was at dinner.  In the phone call, Heather asked permission
to lie in her mother=s
bed, which appellant allowed.  Heather=s older brother, Michael, who was
babysitting, asked for the location of a code to a video game.  The morphine, which appellant=s husband acquired from his sister, was
left in its original brown prescription bottle on the top shelf of the medicine
cabinet.  Appellant testified in partial
answer to the prosecutor=s
questions that she thought the prescription bottle to be Achild-proof.@  She told the prosecutor that the bottle was
the push-and-turn type.  The trial court
cross-examined appellant as follows:

The Court:  You said when you left this evening, your
child was sick?

 

Appellant:  She had a headache.

 

The Court:  And you left her with your ten year old?

 

Appellant:  He was twelve.  He was fixing to be thirteen.

 

The Court:  Your daughter suffers from migraines?

 

Appellant:  We all do, every now and then.

 

The Court:  So you know what a migraine is.  You know how it feels.

 

Appellant:  A headache.

 

The Court:  You left your daughter home --

 

Appellant:  At the time, I didn=t think it was a migraine.  She just said she had a headache.

 








Appellant=s husband, who introduced the morphine
to the home, stated he didn=t know what perils it could cause and
he didn=t
think Athey knew
either.@  AI
think we were just ignorant.@  However, appellant had already testified she
tried one of the tablets and it made her sick. 
The husband also testified that the morphine was on the top shelf of the
medicine cabinet and the aspirin was on the lower shelf.  

At
the end of the hearing, the trial court observed that appellant had not lived a
crime-free life:  ABad
judgment on your part, and your child dies.@ 
The court told appellant she had a responsibility to stay away from
drugs and she didn=t.  He further observed appellant was a danger to
society who allowed drugs in her house Aand
the damage is to your children.@  I don=t
understand how you leave a child who is complaining of headaches -- how you
leave that child in the care of another child to go to a sports bar.  You lost that child, because you violated the
conditions of probation and you violated the trust of this Court.@ 
AI don=t think you intended that the child
take the morphine, but it happened.@  

At
that point, the court accepted appellant=s
plea, found it freely and voluntarily made, that she was competent to enter her
plea, and assessed the maximum confinement of twenty years.








In
view of the record as a whole, we believe that the evidence reasonably and
fairly raised the issue whether appellant consciously disregarded a substantial
and unjustifiable risk.  See Griffin,
703 S.W.2d at 196. 
The fact that a brown prescription drug container,
was placed on the highest shelf of a medicine cabinet, in a lock-top container,
reasonably and fairly raises the issue whether appellant=s
conduct amounted to such disregard that it constitutes a gross deviation from
the standard of care that an ordinary person would exercise under all the
circumstances.  See Tex.Pen.Code Ann. '
6.03(c).  Similarly, going to dinner to
watch the Mavericks and leaving a child with a headache in the charge of her
older brother, nearly thirteen, raises serious
concerns whether such conduct is a gross deviation from the standard of care
that an ordinary person would exercise.  See
id.

The
second count of the indictment charged that appellant recklessly caused serious
bodily injury to Heather by failing to provide adequate medical care for the
complainant, knowing that she was vomiting and crying.  When appellant returned from dinner, Heather
was sleeping in appellant=s
bed.  When appellant awakened Heather,
Heather said she had a headache and that she could not walk right.  So appellant told Heather to hold on to her,
and walked her to bed.  Michael giggled
when Heather ran into the doorjamb. 
Appellant said, AI
thought she was okay.@  Heather was put to bed.  Heather covered her head to block out the
light because she then had a migraine. 
Appellant discussed with her husband the possibility of keeping Heather
home from school the next day because she might have the flu.  AThat=s all we thought.  We didn=t think anything else.@ 
The observation of vomit did not occur until after Heather was dead the
next morning.  This is directly contrary
to the indictment.

Once
again, the evidence reasonably and fairly raised the issue whether appellant
consciously disregarded a substantial and unjustifiable risk.  See Griffin, 703
S.W.2d at 196. A mother, who presumably best knows her own daughter,
thought Heather had a migraine, common to her family, or perhaps the flu.  Putting a child back to bed, under the
circumstances, raises serious questions whether such conduct is a gross
deviation from the standard of care that an ordinary person would
exercise.  See id.








If we believed Moon were applicable, our inquiry would end.  See Moon, 572 S.W.2d
at 682 (negating the rule requiring sua sponte withdrawal of a guilty plea after evidence of
innocence in a non-jury trial). 
In Moon, however, there is no mention of a plea agreement.  Id. 
And as we noted, the State argues the trial court was without
jurisdiction to withdraw appellant=s
plea.  See Perkins, 736 S.W.2d at 281.

Citing
Perkins, the State maintains Athe
trial court lacked jurisdiction to withdraw the Appellant=s guilty plea on its own motion.@ 
The State argues that after approving a plea bargain agreement, the
lower court cannot withdraw the guilty plea. 
Indeed Perkins held that the trial judge Ahad
no lawful authority to sua sponte withdraw [the defendant] Le=s plea of guilty.@ 
Id. at 280. Perkins reasoned that
a cap was placed on the punishment by the agreement and Ain
refusing to go forward with the plea bargain agreement and withdrawing Le=s plea of guilty, actually amounted to
the granting on his own motion a new trial for Le.@  Id. at 280-81.
 Perkins approved Morris v.
State, 658 S.W.2d 310 (Tex.App.--Houston [1st
Dist.] 1983, no writ), holding that the court of appeals did not grant the
defendant a new trial because it concluded that specific performance, which it
could order to be accomplished, and which was all that the defendant in that
case apparently wanted, was the proper remedy. 
Id. at 281.  [T]he defendant is entitled to specific
enforcement if the agreement can be enforced, or, if not enforceable, is
entitled to withdraw his plea.@  Id. at 283.  AThe
court of appeals implicitly found that there is no known impediment to
specifically enforcing the agreement.@  Id.








It
is apparent from the record, and based on the holdings in Moon and Perkins,
that the trial court felt compelled to accept appellant=s
plea of guilty and find her guilty on the basis of her plea.[2]  This was not a trial to the bench, as was the
case in Moon, where the trial court was unencumbered to find appellant
not guilty.  The State itself argues
there was an enforceable contract between the State and appellant  See Perkins, 736 S.W.2d
at 281.  And the State admits the trial
court was without power to withdraw the plea. 
Thus, the rationale of Moon is inapplicable.  According to the State=s
own argument, the court could not withdraw the guilty plea and enter a
not-guilty plea when the defendant enters a plea of guilty before the court
after waiving a jury.  Cf. Moon, 572 S.W.2d at 682; Perkins, 736 S.W.2d at 281.  In other words, the rationale of Perkins
prohibits the trial court from sua sponte withdrawing appellant=s
plea, which in turn makes Moon inapplicable because Moon
presupposes the trial court=s
ability to find the defendant not guilty. 
Moon, 572 S.W.2d at 682.

Perkins
in turn presupposes a valid, enforceable contract.  Perkins, 736 S.W.2d
at 281-83.  But where a contract
with the State purportedly binds an accused to plead guilty when the evidence
reasonably and fairly raises issues of innocence, is
such a contract enforceable?  Or is such
a contract illegal and against the public policy of the State of Texas?








A[A]n action founded upon an illegal
contract the courts of this State have uniformly held that they will leave the
parties where they found them.@  After Hours, Inc. v. Sherrard,
456 S.W.2d 227, 229  (Tex.Civ.App.--Austin 1970), rev=d on other grounds, 464 S.W.2d 87
(Tex. 1971).  The courts have held
otherwise freely entered contracts void because they were contrary to public
policy.  Juliette
Fowler Homes, Inc. v. Welch Assoc., Inc., 793 S.W.2d 660, 663 (Tex. 1990)(unreasonable covenant not to compete).  When the courts do hold contracts void, they
rely upon the state=s
expression of public policy in its statutes. 
Sabine Pilot Serv., Inc. v. Hauck, 687
S.W.2d 733, 735 (Tex. 1985)(holding employment termination for refusal to
perform illegal act contrary to public policy expressed in state and federal
criminal laws).  Thus, to determine
whether a contract violates public policy, we must consider the policies
underlying the applicable statutes.

Whether
a contract violates public policy is a question of law, which we review de
novo.   Barber v.
Colorado I.S.D., 901 S.W.2d 447, 450 (Tex. 1995); Insurance Co. of North
America v. Easton, 73 Tex. 167, 11 S.W. 180, 181 (1889).  Generally, if a contract violates public
policy, it is void, not merely voidable.   Continental Fire & Cas. Ins. Corp. v. American Mfg.
Co., 221 S.W.2d 1006, 1009 (Tex. Civ. App.‑‑Fort Worth 1949, writ ref=d n.r.e.)(explaining that it is Athe
law that contracts prohibited by statute, either expressly or impliedly, are
void@).  Estoppel and
ratification doctrines will not make a contract that violates public policy
enforceable.  Continental Fire & Cas. Ins. Corp., 221 S.W.2d at
1009 (AAn
illegal contract cannot be ratified by either party.@).[3]  However, we are also cautioned:

            Courts must exercise judicial restraint
in deciding whether to hold arm=s‑length
contracts void on public policy grounds: 
Public policy, some courts have said, is a term of vague and uncertain
meaning, which it pertains to the law‑making power to define, and courts
are apt to encroach upon the domain of that branch of the government if they
characterize a transaction as invalid because it is contrary to public policy,
unless the transaction contravenes some positive statute or some well‑established
rule of law.  

 

Lawrence v. CDB Services, Inc.,
44 S.W.3d 544, 553, (Tex. 2001)(citations omitted).

 

Article
1, section 19 of our state constitution provides:  ANo
citizen of this State shall be deprived of life, liberty, property, privileges
or immunities, or in any manner disfranchised, except by the due course of the
law of the land.  Tex.Const. art. 1, '
19.  Article 1, section 29
provides:   ATo
guard against transgressions of the high powers herein delegated, we declare
that everything 








in this >Bill of Rights= is excepted out of the general powers
of government, and shall forever remain inviolate, and all laws contrary
thereto, or to the following provisions, shall be void.@  Tex.Const. art. 1, '
29.  Our law only authorizes a
conviction where guilt is shown beyond a reasonable doubt.  If there be no legal guilt, a conviction
cannot be sustained, although the defendant entered a plea of guilty.  Harris v. State, 172
S.W. 975, 977 (Tex.Crim.App. 1915).  We can only conclude that appellant=s contract with the State to plead
guilty, when the record evidence reasonably and fairly raised issues of
innocence, was void as against public policy. 
See Griffin, 703 S.W.2d at 195 (AIn
any case where evidence is introduced which reasonably and fairly raises an
issue as to the innocence of the accused . . . the defendant=s guilty plea must be withdrawn and a
plea of not guilty must be sua sponte entered by the court.@)(emphasis in original).

We
set aside appellant=s plea of
guilty, and remand this cause for a new trial. 
See Burke v. State, 80 S.W.3d 82, 96 (Tex.App.--Fort Worth 2002, no pet.).[4]

 

January 15, 2004

DON WITTIG,
Senior Justice

Before Panel No. 5

Larsen, McClure, and Wittig, JJ.

(Wittig, J., sitting by
assignment)

 

(Do Not Publish)








DISSENTING
OPINION

 

Ruth
Ann Martin appeals her conviction for injury to a child.  Appellant waived her right to a jury trial
and entered an open plea of guilty to a two paragraph indictment which charged
Appellant with recklessly causing serious bodily injury to her daughter.  The trial court found Appellant guilty and
assessed her punishment at a fine of $1,000 and imprisonment for a term of
twenty years.  Appellant raises three
issues on appeal:  (1) the trial court
erred by failing to reject her guilty plea because the evidence adduced at the
guilty plea hearing negates the culpable mental state; (2) the indictment is
fundamentally defective; and (3) ineffective assistance of counsel.  Finding that the trial court abused its
discretion in accepting the guilty plea when evidence inconsistent with guilt
had been introduced, the majority opinion sustains the first issue.  The majority opinion refuses to follow Moon
v. State, 572 S.W.2d 681 (Tex.Crim.App. 1978)(op. on reh=g), claiming that the instant case
involves a plea bargain.  The appellate
record plainly shows that Appellant entered an open plea of guilty, not a
negotiated plea of guilty.  I
respectfully dissent.

Underlying Facts








Appellant,
who characterized herself as a recovering drug addict, had been on felony
community supervision since 1993 for three delivery of
a controlled substance offenses and possession of a controlled substance.  Despite it being a violation of the terms and
conditions of her community supervision, Appellant knowingly possessed a bottle
of morphine which she stored in Aa
regular aspirin bottle@
in the medicine cabinet of her home. 
Appellant did not recall whether the bottle had a childproof cap; she
believed it was a Apush and
turn@
type.  Appellant=s
mother-in-law had taken morphine prior to her death from cancer.  A relative gave the morphine to Appellant=s husband, Raymond Martin, and asked
him to sell it to raise money to pay for the funeral expenses.  Mr. Martin had been unable to sell any of the
morphine pills but they had not disposed of the drug or returned it to the
relative.  Appellant knew the drug was
dangerous because she and a friend had become ill after ingesting one of the
morphine tablets from the same bottle.  

On
May 3, 2001, Appellant and her husband, Raymond Martin, decided to go out to a
sports bar and watch a Dallas Mavericks basketball game.  Appellant left her pre-teen daughter,
Heather, and twelve-year-old son, Michael, alone at home.  When Appellant left, she knew that Heather
had a headache.  According to Appellant,
migraine headaches were common in her family. 
Appellant and Mr. Martin returned home after four hours and found
Heather asleep in their bed.  Heather
whimpered when Appellant told her that she needed to get in her own bed.  Heather walked into a door jamb and told
Appellant that she could not Awalk
right,@ so
Appellant held on to her daughter and walked her to her room.  When Heather got into her bed, she shielded
her eyes from the light and covered her head because it hurt.  In a written statement, Appellant said that
Heather had cried and vomited all night.[1]  The following morning, Appellant went into
Heather=s
room.  Heather did not Alook right@
and she was cold to the touch.  Appellant
picked her up and vomit came out of Heather=s
mouth.  She ran outside and screamed for
someone to call 911.  A neighbor came
over and performed CPR while they waited for an ambulance.  Appellant later learned that Heather had died
sometime during the night.  After five
undigested morphine tablets were found in Heather=s
stomach, a Child Protective Services case worker and a detective went to
Appellant=s
house.  When Appellant learned that the
caseworker and detective were on their way to her house, she instructed her
husband to dispose of the morphine and marihuana in the house.








A
grand jury indicted Appellant for injury to a child.  The first paragraph of the indictment alleged
that Appellant recklessly caused serious bodily injury to her daughter by:

[L]eaving said complainant unsupervised by adult supervision,
in the defendant=s home,
and leaving Morphine, a dangerous and lethal drug, within access of the
complainant, which the complainant ingested. 


 

The second
paragraph of the indictment alleged that Appellant recklessly caused serious
bodily injury to Heather by:

[F]ail[ing] to provide adequate medical care for the complainant,
knowing the complainant was vomiting and crying, and at the time of the offense
the defendant had a legal duty to act, to-wit: 
the defendant was the parent of the complainant, and the defendant had
assumed care, custody and control of the complainant.

 








Although
the majority opinion refers to the existence of a plea bargain, the appellate
record demonstrates that Appellant waived her right to a jury trial and entered
a non-negotiated or open plea of guilty.[1]  Appellant executed a written judicial
confession by which she specifically admitted that the allegations contained in
both paragraphs of the indictment were true and that she was guilty of the
injury to a child offense alleged in the indictment.  After introducing Appellant=s judicial confession, the State
rested.  Appellant testified and offered
other evidence in support of her request that she be placed on community
supervision.  After Appellant rested and
both sides closed, the trial court accepted Appellant=s
guilty plea and assessed her punishment at imprisonment for a term of twenty
years.  

Sua Sponte Withdrawal of Guilty Plea

In
Issue One, Appellant complains that the trial court abused its discretion by
failing, on its own motion, to withdraw her plea of guilty since the evidence
presented by Appellant at the guilty plea  is Aconsistent
with innocence@ and
negated a reckless culpable mental state. 
She argues that the evidence showed nothing more than negligence.  The State responds with two separate
arguments.  First, citing Perkins v.
Court of Appeals for the Third Supreme Judicial District, 738 S.W.2d 276,
281 (Tex.Crim.App. 1987), the State responds that the
trial court lacked jurisdiction to withdraw Appellant=s
guilty plea after approving a plea bargain agreement.  Second, citing Moon v. State, 572
S.W.2d 681 (Tex.Crim.App. 1978), the State argues
that the trial court is not required to withdraw the guilty plea but rather
could consider all of the evidence and either find Appellant not guilty or find
her guilty of the lesser offense.  I will
consider the State=s
arguments in the order presented.








In
Perkins, the trial court approved a plea bargain agreement where the
State and defense agreed to a twenty-five year sentence.  Perkins, 738 S.W.2d
at 278.  The trial court indicated
that it would consider sentencing the defendant to less than twenty-five years
but would not exceed the twenty-five year term agreed to by the parties.  Id. at 279.  The parties also agreed to the completion of
a pre-sentence investigation (PSI).  Id. at 278. 
When the parties returned to court, the State asked the trial court to
not follow the plea bargain agreement because one of the victims had provided
new information regarding the defendant=s
participation in the offense.  Id. at 279-80. 
The defendant objected but the trial court permitted the State to
withdraw its plea agreement; consequently, the defendant withdrew his plea of
guilty under protest.  Id.
at 280.  The defendant sought
mandamus relief from the Third Court of Appeals.  That court granted mandamus relief requiring
that the trial judge enforce the plea bargain agreement.  Id. at 277-78.  The trial judge then sought mandamus relief
from the Court of Criminal Appeals.  When
a defendant enters into a plea bargain agreement with the prosecutor, and the
trial judge approves the agreement, and the agreement is not kept, the proper
relief is either specific performance of the agreement, if it can be enforced, or withdrawal of the plea if it cannot.  Id. at 283-84.  Finding the agreement enforceable, the Court
of Criminal Appeals held that the trial judge had a ministerial duty to go
forward with the plea bargain agreement which the court had approved.  Id. 
Further, the trial court had no discretion to set aside the guilty plea
and plea bargain agreement.  Id. at 284.  Perkins
is factually distinguishable because it involved a plea bargain which had been
approved by the trial court.  Thus, the
crux of the dispute in Perkins is whether the defendant could insist on
specific performance of the plea bargain. 
The instant case does not involve a plea bargain or a question of
specific performance.  Consequently, the
State=s first
argument is without merit.  








By
its second argument, the State relies on a long line of cases holding that when
the defendant waives his right to a jury trial and enters a guilty plea, the
trial judge is not required to withdraw the defendant=s
guilty plea if evidence inconsistent with guilt is introduced.  See Aldrich, 104
S.W.3d at 892-93; Moon, 572 S.W.2d at 682.  Prior to the decision in Moon, the
trial court would have been required to withdraw the defendant=s guilty plea and enter a plea of not
guilty if evidence inconsistent with guilt had been introduced.  The majority opinion paints Moon as
creating a new rule but as the Court of Criminal Appeals stated in Aldrich,
AMoon did not impose a new
requirement on the trial court; it removed an old requirement.@ 
Aldrich, 104 S.W.3d at 893.  The court did so because Ait is apparent that the doctrine
requiring a trial court to sua sponte withdraw a guilty plea when evidence was adduced
that either made evident the defendant=s
innocence or reasonably and fairly raised an issue as to his guilt was rooted
upon the proposition that the court was vested only with the authority to
resolve legal questions.@  Aldrich, 104 S.W.3d at 893, quoting
Moon, 572 S.W.2d at 687 (Phillips, J., concurring).








The
majority opinion does not acknowledge the major statutory changes which led to
the decision in Moon.  Prior to
January 1, 1966, the Code of Criminal Procedure did not permit a defendant to
waive a jury and enter a plea of not guilty before the trial court.  Moon, 572 S.W.2d at
682.  Thus, a trial court=s authority in felony cases was
restricted to resolving legal questions and only a jury could decide factual
issues.  Consequently, if the defendant
waived a jury trial and entered a plea of guilty before the court and the court
was presented with evidence inconsistent with guilt thereby raising a fact
issue, the court was not authorized to find the defendant guilty of a lesser
included offense or not guilty because it did not have fact-finding
authority.  In those circumstances, the
trial court was required to withdraw the defendant=s
guilty plea, enter a plea of not guilty, and impanel a jury to hear the not
guilty plea.  Aldrich, 104 S.W.3d at 893; Moon, 572 S.W.2d at 682.  The1965 amendments to the Code of Criminal
Procedure made a significant change by providing that the defendant could waive
a jury trial and enter a plea of not guilty before the court in all cases
except capital cases.  Id.
at 682 (citing Articles 1.13 and 1.14 of the Code of Criminal Procedure).  These statutory changes authorized the trial
court to resolve factual questions in felony cases.  As the trier of
fact, the trial court may now find that the evidence did not create a
reasonable doubt as to guilt, find the defendant guilty of a lesser offense and
assess the appropriate punishment, or find the defendant not guilty just as a
jury would have done under the pre-1966 procedure.  See Aldrich, 104
S.W.3d at 893; Moon, 572 S.W.2d at 682.  It would serve no purpose to withdraw the
guilty plea and enter a not guilty plea. 
Id.

The
majority claims that it is not challenging the rationale of Moon, yet it
makes a caustic reference to Moon as an exception to the constitutional
requirement that only the truly guilty be convicted.  The not-so-thinly-veiled criticism is simply
inaccurate.  Because the trial court has
the duty to consider all of the evidence and is authorized to find the
defendant guilty of a lesser-included offense or even find the defendant not
guilty based upon the evidence, Moon does not promote the conviction of
innocent people.  To the contrary, Moon
made it clear that trial courts are obligated to consider the evidence in
determining whether the defendant is guilty. 









If
there were any doubt about the validity of Moon, the Court of Criminal
Appeals dispelled it in Aldrich.  Aldrich,
104 S.W.3d at 893. 
There, the defendant entered an open plea of guilty to two counts of impersonating
a public servant.  Id.
at 891.  The State introduced the
defendant=s
judicial confessions and the defendant testified that she had claimed to be a
police office in order to gain entrance to a motel room.  Id. 
The court found the evidence sufficient to prove her guilty but did not
find her guilty, and set the case for Asentencing@ at a later date.  Id. 
When the parties returned to court, a different judge was
presiding.  Id.  During a statement to the court, the
defendant admitted claiming to be a police officer.  Id. at 891-92.  She told the arresting officers that she had
done so because some men were trying to rape her.  Id. at 892.  The visiting judge, operating under the
mistaken belief that the defendant had already been found guilty by the other
judge, incorrectly informed Aldrich that he could not find
her not guilty.  Id.  Aldrich replied that she was guilty of
claiming to be a police officer.  Id.  On appeal, the defendant argued that the
evidence raised the defense of necessity and that the court should have
rejected her guilty plea.  Id.  The Dallas Court of Appeals affirmed.  Aldrich v. State, 53
S.W.3d 460 (Tex.App.--Dallas 2001).  In her petition for discretionary review,
Aldrich argued that the trial court was obligated to conduct what she termed a AMoon review@ and consider whether her defenses were
valid.  Aldrich, 104 S.W.3d at 892. 
The Court of Criminal Appeals held that Moon did not impose such
an obligation on the trial court and simply acknowledged the statutory changes
granting the trial court the authority to resolve factual issues.  See id. at
893-94.  Additionally, the court held
that Aldrich had an obligation to object when it became apparent that the
visiting judge mistakenly believed she had already been found guilty and he had
no authority to consider whether or not she was in fact guilty.  Id. 
at 895. 
Because Aldrich did not bring this error to the trial court=s attention, and she never sought
acquittal or withdrawal of her guilty plea, the Court of Criminal Appeals held
that she could not present her claim for the first time on appeal.  Id. 
at 896. 
In my opinion, Aldrich=s
waiver rule pertains to the specific error which occurred in that case, namely,
the visiting judge=s failure
to consider defensive evidence due to a mistaken belief about the procedural
posture of the case, and does not apply to the more general issue presented
here.








Turning
to the issue at hand, the evidence supports the finding of guilt.  Appellant judicially confessed to both
paragraphs in the indictment. 
Additionally, there is evidence showing that she left her young daughter
in the care of her twelve-year-old son, knowing that her daughter had a headache
and knowing that she had left a dangerous drug, morphine, stored in a Aregular aspirin bottle@ in the family=s
medicine cabinet.  Appellant knew of the
morphine=s danger
through personal experience as she had become quite ill from ingesting a single
tablet.  While Appellant attempted to
explain or mitigate certain aspects of her conduct, the trial court apparently
resolved the conflicting evidence and credibility issues against Appellant and
found her guilty of recklessly causing serious bodily injury to a child.  Applying Moon to the instant case, I
would overrule Appellant=s
first issue.  See Brown v. State,
11 S.W.3d 360, 362‑63 (Tex.App.‑-Houston
[1st Dist.] 2000, pet. ref=d)(robbery defendant=s
testimony at sentencing that she had not intended to do anything like this and
was forced to commit the crime did not obligate trial court to sua sponte withdraw
the guilty plea).  For these reasons, I
respectfully dissent.

 

January 15, 2004

ANN CRAWFORD McCLURE, Justice

 











[1]  We do not believe this defense is
available.  See Tex.Pen.Code Ann.
' 22.04(k)(2)(B)(i) (Vernon 2003).





[2]  See also Article 1.15, which  provides, in relevant part:

 

[T]hat it shall be
necessary for the state to introduce evidence into the record showing the guilt
of the defendant and said evidence shall be accepted by the court as the basis
for its judgment and in no event shall a person charged be convicted upon his
plea without sufficient evidence to support the same.

 

Tex.Code Crim.Proc.Ann.
art 1.15 (Vernon Supp. 2004).





[3]  We read the law to mean that an unlawful
agreement is not only unenforceable as against public policy, but also the
illegality of the bargain cannot be waived by estoppel
or ratification.





[4]   Because of our disposition of the first
issue, we do not address appellants other two issues.   While we could also simply remand to
factually determine whether or not the plea bargain agreement was lawful, this
would, for all practical purposes, amount to the same remedy as a new trial.





[1]  At the guilty
plea, Appellant contradicted her written statement.  She testified that she was only referring to
her daughter Awhimpering@ when
she initially put her to bed, and based upon what she observed the following
morning, she had assumed Heather had vomited during the night.  





[1]  The plea papers do not state that there is a
plea bargain in the case and the judgment refers to the guilty plea as an Aopen plea.@  Further, at the beginning of the guilty plea,
the following exchange occurred between the trial court and Appellant=s counsel:

 

[The trial court]: 
You=re coming before me on what=s called an open plea agreement.  It=s my --
is it an open plea?

 

[Appellant=s trial
counsel]:  Yes, sir.

 

[The trial
court]:  Open plea agreement.  It=s my
understanding, when you=re arraigned, you=re going
to enter a plea of guilty and you=re
asking me to assess punishment somewhere within the punishment range I
described to you earlier.