**UNITED STATES of America**

v.

**Ronald MARBLE, Appellant.**

**No. 89–3177.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 8, 1990.

Decided Aug. 6, 1991.

Melvin M. Dildine (appointed by the Court), Washington, D.C., for appellant.

James A. Meade, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Theodore A. Shmanda, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before WALD, D.H. GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Ronald Marble appeals his conviction for bank robbery on the ground that the district court abused its discretion by failing to impose the insanity defense over Marble's competent objection, or alternatively that the court did not conduct a sufficient hearing to determine the propriety of imposing the defense. *See Whalem v. United States*, 346 F.2d 812 (D.C.Cir.1965) (en banc); *see also United States v. Wright*, 627 F.2d 1300 (D.C.Cir.1980) (*Wright II*); *United States v. Robertson*, 507 F.2d 1148 (D.C.Cir.1974) (*Robertson I*). Because we find that the district court acted within its discretion, we affirm.

## I. BACKGROUND

One day in 1988, Ronald Marble walked into the Signet Bank branch office at 2000 M Street in Washington, D.C., and approached a customer representative with the declared intention of opening an account. Perhaps because he gave two different names to the bank officer, he met with no success on that mission. Marble then ambled over to the nearest in a row of six tellers and handed her a note, scrawled on a piece of paper bag, that said, "This is a holdup. Put the money in the bag." After the first teller had emptied her cash drawer, Marble told her to pass the bag to the next teller in line; in this way, all six tellers contributed to the two bulging bags of cash that constituted Marble's unlawful withdrawal. Bags in hand, Marble delivered the simple valediction, "Peace," and walked out of the bank.

The police were summoned. A bystander told them that Marble had gone thataway; looking around the indicated corner, an officer saw Marble walking down the street with an overflowing bag of currency in each hand, oblivious to the banknotes spilling onto the ground. The officer arrested Marble; a search produced, in addi-

tion to the bank's cash, an eight-inch steak knife wrapped in a paper towel.

Not surprisingly, when Marble was indicted and tried for bank robbery, 18 U.S.C. § 2113(a), his appointed counsel urged him to plead not guilty by reason of insanity. Marble resisted, thinking (for bizarre reasons not relevant here) that a jury would find him innocent.

Again not surprisingly, Marble's competence to stand trial was drawn into question. His appointed attorney also raised the possibility that the court should impose an insanity defense, and the district court appointed amicus counsel to make the case for *sua sponte* imposition of the insanity defense.

Following a hearing at which medical experts testified, the court found Marble competent to stand trial. Marble's lucidity, it seems, varies according to the consistency with which he takes his prescribed medication. He had been remiss for several months before the robbery, but was regularly and adequately medicated by the time of trial. Because Marble's preferences and intentions respecting the insanity defense were unclear, however, the district court bifurcated the trial, thus postponing until the case was resolved on the merits both consideration of Marble's choice not to plead insanity and the question of his competence to make that choice.

After the jury had convicted Marble of bank robbery, the district court determined that Marble was competent to waive the insanity defense. Marble indicated that he did not want to plead insanity because he would rather receive a definite sentence to an institution for the criminally insane than face an indefinite civil commitment. The court, remarking that Marble stated his choice "in a very clear-eyed, straight up way," declined to impose the insanity defense against the defendant's will. Instead the district court ordered amicus counsel to appeal the court's refusal to impose the defense, and so the case comes here.

## II. ANALYSIS

This circuit allows, and in theory may sometimes require, the district court to impose the defense of insanity over the objection of a defendant who is competent at the time of trial. Marble contends that the district court in this case abused its discretion by failing to impose that defense, or at the least by failing to conduct a more comprehensive hearing on the question whether to impose it.

### A. *Imposition of the Insanity Defense in This Circuit*

In *Whalem v. United States*, 346 F.2d 812, the leading case in the field, this court explained the rationale for requiring the district court to raise the issue of insanity on its own motion:

> [I]f a man is insane in the eyes of the law, he is blameless in the eyes of society and is not subject to punishment in the criminal courts....
>
> [T]he trial judge must uphold this structural foundation by refusing to allow the conviction of an obviously mentally irresponsible defendant, and when there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case.

346 F.2d at 818.

The court continued, "[I]n the pursuit of justice, a trial judge must have the discretion to impose an unwanted defense on a defendant and the consequent additional burden of proof on the Government prosecutor." *Id.* at 819. The district court might abuse that discretion by failing to impose the defense where "a combination of factors ... require[s] the trial judge to inject the insanity issue." *Id.*

Early cases applying *Whalem* emphasized the discretionary nature of the court's decision whether to impose the insanity defense. *Cross v. United States*, 354 F.2d 512, 513 (D.C.Cir.1965) (district court has "discretionary power to act as it sees fit"); *Trest v. United States*, 350 F.2d 794 (D.C.Cir.1965) (affirming decision not to impose defense despite uncontested psychiatric report stating that defendant's crimes were product of mental disorder). Although in the 25 years since *Whalem* we

have never reversed a district court's exercise of that discretion, *see Wright II*, 627 F.2d at 1307 (the most recent case on this issue), we did once warn that "[a] defendant who has a substantial insanity defense may decide to waive that defense ... [, but if] the trial court failed to raise the defense sua sponte, then the defendant has a ground for appellate reversal on the basis of *Whalem*." *United States v. Wright*, 511 F.2d 1311, 1314 (D.C.Cir.1975) (*Wright I*).

In *Robertson I*, the court laid down specific procedures to be followed by the district court when a defendant declines to raise the insanity defense although there is "sufficient question" of mental responsibility to go to the jury. 507 F.2d at 1161. We required the district court to "insure[ ] that he hear evidence supporting as well as opposing the imposition of an insanity defense," *id.* at 1158, and suggested that "the appointment and participation of amicus counsel may well be the only way to elicit such evidence." *Id.* at 1158 n. 45. Although the district court "is of course not bound to adopt in whole or in part the views of any expert," the trial judge was directed to "conduct on the record a thorough exploration of the [differing views of the experts] and in addition set forth in reasonable detail the reasons for his own ultimate determination." *Id.* at 1161.

## B. *Subsequent Developments*

No other federal court of appeals has imposed a duty upon the district court to raise the insanity defense; indeed, only a few have even considered the issue. *See Edwards v. United States*, 795 F.2d 958, 963 (11th Cir.1986); *Mendenhall v. Hopper*, 453 F.Supp. 977 (S.D.Ga.1978), *aff'd without op.*, 591 F.2d 1342 (5th Cir.1979). For rulings by district courts, see also *Foster v. Marshall*, 687 F.Supp. 1174, 1175 (S.D.Ohio 1987) (decision to interpose insanity defense "resides in the trial judge's discretion"); *id.* at 1176 (court not authorized "to impose an attorney's will on an unwilling, rational defendant"); *accord, United States ex rel. Laudati v. Ternullo*, 423 F.Supp. 1210, 1216–17 (S.D.N.Y.1976).

*But cf. United States v. Moody*, 763 F.Supp. 589 (M.D.Ga.1991) (habeas court upheld trial court's exercise of discretion but applied analyses of both *Whalem* and *Frendak v. United States*, 408 A.2d 364 (D.C.Ct.App.1979) (court may not impose insanity defense knowingly and voluntarily waived by defendant)).

Members of this court have long recognized the "troubling questions" raised by the imposition of the insanity defense over the objection of a defendant who is competent to stand trial. *United States v. Robertson*, 529 F.2d 879, 881 (D.C.Cir.1976) (*Robertson II*) (per curiam). *See also, e.g., United States v. Snyder*, 529 F.2d 871, 876 n. 1 (D.C.Cir.1976) (Tamm & Robb, JJ., "reserve the right to reexamine the holding and rationale of [*Robertson I*] in the event of any *en banc* hearing involving the same issue of the right of a mentally competent defendant to direct his defense"); *Robertson I*, 507 F.2d at 1161 (Bazelon, C.J., concurring), 1164–65 (Wilkey, J., dissenting). Developments in the law required us to revisit those troubling questions in 1980; further development since then prompts us yet again to reconsider the rationale for the rule of *Whalem*.

## 1. Supreme Court Decisions

The Supreme Court has held that the Constitution permits a trial court to accept a defendant's guilty plea although the defendant simultaneously protests his innocence of the crime charged. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The Court rejected the view that " '[o]ur law only authorizes a conviction where guilt is shown,' " *id.* at 33, 91 S.Ct. at 165 (quoting *Harris v. State*, 76 Tex.Crim. 126, 131, 172 S.W. 975, 977 (1915)). A trial court has discretion to refuse a defendant's guilty plea, *id.* at 38 n. 11, 91 S.Ct. at 168 n. 11, *see* FED.R.CRIM.P. 11, or to accept it and thereby to honor his strategic choice to acquiesce in a determinate criminal penalty. "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his partic-

ipation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. at 167.

The Court has also held that the Sixth Amendment guarantees a defendant the right to conduct his own defense. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In so doing the Court reaffirmed the "nearly universal conviction ... that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817, 95 S.Ct. at 2532. The Court explained that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Id.* at 819, 95 S.Ct. at 2533.

The *Whalem* line of cases is in substantial tension with both *Alford* and *Faretta* insofar as it precludes a district court from simply deferring to the choice of a competent defendant not to plead insanity, and may at times require the court to override that choice. *Alford* stands clearly for the proposition that a court may defer to a defendant's strategic choice to accept criminal responsibility even if his actual culpability is neither proven nor admitted. This seriously undermines the *Whalem* rationale that the law does not countenance the punishment of a person whose crime has been proved beyond a reasonable doubt but whose mental responsibility (although not denied) is objectively in doubt. *Cf.* 346 F.2d at 818.

Furthermore, to impose a particular defense upon an accused, in essence to force him to affirm that he is insane, makes not only appointed counsel but the defendant himself "an organ of the State." *Faretta,* 422 U.S. at 820, 95 S.Ct. at 2533. "Unless the accused has acquiesced ..., the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his defense.*" *Id.* at 821, 95 S.Ct. at 2534 (emphasis in original).

Nonetheless, this court refused to modify the rule of *Whalem* in light of *Alford* and *Faretta,* because "[n]either case involved an insanity plea." *Wright II,* 627 F.2d at 1310. *But cf. Frendak v. United States,*

408 A.2d 364 (D.C.Ct.App.1979) (overruling *Whalem* in light of *Alford* and *Faretta*). Echoing *Whalem,* we maintained that the issue of a defendant's sanity calls into question · "the very capacity of our legal system to assign blame." *Wright II,* 627 F.2d at 1310; *see Whalem,* 346 F.2d at 818.

### 2. The Insanity Defense Reform Act of 1984

After we had adhered to *Whalem* in *Wright II,* the Insanity Defense Reform Act of 1984, Pub.L. 98–473, tit. II, ch. IV, 98 Stat. 2057, made insanity an affirmative defense in the federal courts. *See* 18 U.S.C. § 17. In both *Whalem* and *Wright II,* however, the court had expressed and to a significant degree rested upon the view that insanity is fundamentally different from other defensive pleas—a view that was more compelling when the Government was required to prove beyond a reasonable doubt the defendant's mental responsibility for his crimes. *See Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). *See also Robertson I,* 507 F.2d at 1164 (Wilkey, J., dissenting) ("neither *Whalem* nor any of our other precedents apply" in light of D.C. Code amendment shifting to defense the burden of proving insanity). *But see id.* at 1152 n. 13 (court declines to reach argument as it was not pressed on appeal, but adds in dictum that it "appears to be without substantial merit").

In holding that a defendant "may not, in a proper case, prevent the court from injecting [the issue of insanity]," *id.,* the *Whalem* court had relied solely upon *Overholser v. Lynch,* 288 F.2d 388 (D.C.Cir. 1961) (en banc), *rev'd on other grounds,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). In *Lynch* we reversed a district court's grant of habeas corpus relief in a case in which the trial court had (1) refused to allow the competent defendant, assisted by counsel, to plead guilty, (2) admitted testimony of the defendant's mental condition at the time of the offense, over his objection, and (3) ultimately found the defendant not guilty by reason of insanity.

This court approved the trial court's handling of the case, saying that: "The cases

... establish almost a positive duty on the part of a trial judge not to impose a criminal sentence on a mentally ill person.... [The] decision [to plead guilty and forgo an insanity defense] was one which [the defendant] and his counsel did not have an absolute right to make." *Id.* at 393. Our conclusion rested squarely upon the premise that "insanity is not strictly an affirmative defense and can be raised by either the court or the prosecution," *id.* at 392 (citing *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499), and upon the moral judgment that "imprisonment was *wrong* in the case of a mentally ill person," *id.* at 393 (emphasis in original).

The IDRA stripped away those underpinnings of *Lynch,* and hence of the only authority supporting *Whalem.* As an affirmative defense, the insanity issue no longer "impose[s] ... an additional burden of proof on the Government prosecutor." *Whalem,* 346 F.2d at 819. Convicting the competent mentally ill criminal is no longer "wrong" in the judgment of the Congress—nor, we infer, of the public it represents. Instead of excusing the competent mentally ill from criminal liability, the Congress has now provided standards to govern their confinement and treatment, so that "imprisonment ... of a mentally ill person" is not the only alternative to acquittal by reason of insanity. 18 U.S.C. §§ 4244–4246. The defense of insanity is available only to a person able to prove by clear and convincing evidence his inability to appreciate the nature and quality or the wrongfulness of his acts, and that such inability resulted from a "severe" mental disorder. 18 U.S.C. § 17. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 229–30 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3411, 3412 (limitations included specifically in order to exclude persons with minor mental illnesses and "to assure that only those defendants who plainly satisfy the requirements of the defense are exonerated from what is otherwise culpable criminal behavior").

Now that the Congress has undercut both the technical and the policy bases for

*Lynch* and *Whalem,* the reasoning in *Wright II* cannot stand; we can no longer distinguish the decision not to plead insanity from other aspects of a defendant's right, established in *Faretta,* to direct his own defense. Moreover, unlike *Faretta,* the *Whalem* line of cases does not rest upon a constitutional ground, *cf. Leland v. Oregon,* 343 U.S. 790, 797, 72 S.Ct. 1002, 1006, 96 L.Ed. 1302 (1952) (*Davis* established "no constitutional doctrine, but only the rule to be followed in Federal courts"); it rests only upon this court's view of public policy in 1965. The IDRA reflects a more authoritative social judgment, and one that squarely contradicts the judicial predilections underlying *Whalem.*

Thus we are constrained to conclude that the *Whalem* line of cases has become a "victim of the shifting sands" of statute and case law. *See Ralpho v. Bell,* 569 F.2d 607, 629 (D.C.Cir.1977). Guided by the clear policy of the IDRA to hold criminally responsible all but the most patently insane offenders, and the Supreme Court's deference, expressed in *Faretta* and *Alford,* to a competent defendant's strategic decisions, we hold that a district court must allow a competent defendant to accept responsibility for a crime committed when he may have been suffering from a mental disease. Insofar as they hold to the contrary, *Whalem* and its progeny are overruled.*

### III. Conclusion

The ultimate effect of the *Whalem–Robertson* doctrine has perhaps been slight: this court has never reversed a district court's exercise of the discretion it allows on the question whether to impose an insanity defense. As this case illustrates, however, *Whalem* may require the district court to explore complex, delicate, and disputed issues of fact—a diversion that can no longer be justified in light of the repudiation, by the Congress and the Supreme Court, of the premises underlying that effort.

When a defendant can make no clear choice for or against raising the defense,

---

* This opinion has been approved by the entire court, and thus constitutes the law of this cir-

cuit. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).

and the evidence suggests that the defense is viable, it might then be appropriate for the court to exercise its discretion to instruct the jury *sua sponte*. *Cf. Frendak*, 408 A.2d at 379 (trial court has "discretion to raise an insanity defense *sua sponte* only if the defendant is not capable of making, and has not made, an intelligent and voluntary decision"); *cf. also* Ullman, *A Grisly Case, A Dilemma for the Jury*, NAT'L L.J., June 17, 1991, at 8 (defendant in *People v. Rakowitz*, No. 9N088184 (N.Y.Sup.Ct., N.Y.Co.1991) refused to let counsel plead insanity but "stopped opposing" counsel's presentation of the defense at trial). We need not, however, speculate about what to do when the defendant cannot make a choice. It is sufficient for the present case, and we hold, that a district court must honor the choice of a competent defendant not to raise the insanity defense.

Because the district court in this case was under no duty to impose the insanity defense over Marble's competent objection, it did not abuse its discretion, and the judgment is

*Affirmed.*