McGEE, Chief Judge.
 

 *572
 
 Tina Stamey Payne ("Defendant") appeals from the trial court's order finding her not guilty by reason of insanity ("NGRI") of one count of attempted first-degree murder and one count of assault with a deadly weapon inflicting serious injury. On appeal, Defendant asserts that she was denied her constitutional right to assistance of counsel when her defense lawyer pursued a pretrial defense of NGRI against her wishes.
 

 *573
 
 I.
 
 Background
 

 Evidence presented at multiple pretrial hearings, based in part on court-ordered psychological reports, tended to show the following: On 4 August 2013, Defendant was at her home when she pointed a .22 caliber handgun at A.P., her fifteen-year-old daughter, and said: "I'm sorry." A.P. screamed for her brother and Defendant's twenty-eight-year-old son, R.P., ran into the room and wrestled the gun from Defendant. During the struggle, the gun discharged twice. A.P. was hit in her left shoulder by a bullet, and R.P. was hit in his right hand. Defendant then "went outside with a knife and tried to get hit by a car, and then began cutting her wrists." Defendant was arrested that day, and indicted for attempted first-degree murder and assault with a deadly weapon inflicting serious injury on 19 August 2013.
 

 The day after the incident, on 5 August 2013, a forensic nurse practitioner conducted a psychiatric consultation with Defendant and diagnosed her as suffering from psychosis or being psychotic at the time of the 4 August 2013 incident. Defendant's Counsel filed an ex parte motion on 9 September 2013, requesting the trial court to approve funds to retain a mental health expert to examine Defendant in order "to determine whether or not [ ] Defendant has any defenses based upon [ ] psychological, mental, emotional and personality problems." Defendant's counsel's motion was granted, and Defendant was evaluated by an expert retained by her counsel. Defendant's counsel filed a motion on 8 April 2014 stating that Defendant "hereby notifies the State of [her] intention to use at trial defenses of, but not limited to alibi, mental infirmity, diminished
 
 *479
 
 capacity, self-defense, mistake of fact, insanity and/or accident."
 

 A.
 
 Initial Capacity Hearings
 

 At a 6 November 2014 hearing, the trial court was informed by the State that the defense expert had completed his mental health evaluation of Defendant. The State requested that Defendant be committed to Central Region Hospital for evaluation by State experts on capacity and insanity issues. Defendant's counsel did not object. Defendant stated: "I understand the State wants a second opinion for an evaluation, and I agree with that, if that's what the State feels like they need[.]" However, she also informed the trial court: "My attorney and I do not agree on a lot of things. He's made a lot of decisions without even talking to me about it." Defendant further stated:
 

 I let [my attorney] know on August the 18th of [2013] that I wanted to plead not guilty because it was an accident. [My attorney] waited until April of this year and put in a plea
 
 *574
 
 for insanity. He told me the truth was not good enough, it was not going to work. He thought an insanity plea was the best. But I know what happened because I was there, and my children were there. I didn't try to murder anybody and I did not shoot anyone. And I know this and my children know this.
 

 ....
 

 I know I didn't make a confession, I didn't do it. I did not try to murder anybody and I didn't shoot anybody. You don't confess to that. I don't know why my attorney keeps trying to do this insanity plea when I've made it clear to him that it was an accident, the truth was gonna have to be good enough.
 

 The trial court noted that Defendant sounded "very lucid, very rational," but that it had a petition that said Defendant had mental health issues and a history of paranoia, as well as "two lawyers telling [the court] that they think that [Defendant] need[s] to be examined by another psychiatrist," and so the trial court granted the State's request to commit Defendant for further evaluation to determine her capacity to proceed.
 

 Defendant's capacity to proceed was evaluated at a 21 July 2015 hearing. At that hearing, Defendant stated she had told her counsel she wanted a trial by jury, but that he had not gotten back in contact with her about the matter. Based upon the evidence presented, Defendant was again ordered to be "involuntarily committed ... for appropriate treatment until such time as she be rendered competent in this matter."
 

 B.
 
 Pretrial Determination of NGRI
 

 Another hearing was conducted on 7 April 2016, which the State explained to the trial court was for the following two purposes:
 

 Your Honor, we put this on the calendar specifically for this afternoon to address the defense of insanity pretrial. As we were reviewing the court file and all of the evaluations that have been done [Defendant's counsel] and I discovered that there has not been a finding of capacity at this point. So we will need to address that first. And once that determination has been made then move to a pretrial hearing as to the defense of insanity and whether or not it would apply to [Defendant's] cases that are pending.
 

 Although no written motion is included in the record, it appears Defendant's counsel did move, pursuant to
 
 *575
 
 N.C. Gen. Stat. § 15A-959(c) (2015), for a pretrial determination by the trial court that Defendant was NGRI of the crimes charged. During the 7 April 2016 hearing, the State, Defendant's counsel, and Defendant herself, agreed Defendant was competent to assist her attorney and proceed to trial. The trial court ruled that Defendant was competent to proceed, and a hearing pursuant to N.C.G.S. § 15A-959(c) was then conducted.
 

 The State requested that the trial court "move forward to address specifically the second portion of the purpose of us being here today, which is in regard to whether or not insanity would be a viable defense for [Defendant] ... at trial proceedings" pursuant to N.C.G.S. § 15A-959(c). The trial court next heard testimony concerning Defendant's motion for pretrial determination of insanity. Defendant's expert witness testified that, in her opinion, Defendant suffered from schizophrenia at the time of the offenses and that Defendant "understood the action of what
 
 *480
 
 she was doing but not the wrongfulness of the action." After this testimony, which constituted the entirety of the evidence presented, Defendant asked, and was permitted, to make a statement to the trial court.
 

 [DEFENDANT]: Your Honor, [my attorney] had spoke[n] to me when I was informed of all of my options for a plea, when I was in the hospital for four months. I took restorative classes and that was an extensive explanation of the court system and process and the pleas that were available to me for the accusations made against me.
 

 [My attorney] and I discussed that. And I expressed to [my attorney] that I did not want him to file a motion for a NGRI plea, that I realized it wasn't an option to me. But basically for it to be heard without hearing all of the evidence to be disputed and to have a proper jury hearing to find me guilty of the crimes I'm alleged to have committed. That it was an admission of guilt with an excuse and that I would prefer-I did not want him to give that plea, enter the motion for the use of that plea.
 

 But [my attorney] did that without my knowledge, and he only informed me of it on last Friday, April the 1st he informed me of that. And that was pretty much it. But as far as it being used in a trial, I have no problem with that. But to be used without a proper trial to dispute any evidence against me I feel like that would violate my rights.
 

 THE COURT: Okay
 
 *576
 
 [DEFENDANT]: And I'd ask that you would enter-that you would deny an entry of a NGRI plea today before a proper hearing and proper trial to establish guilt because it hasn't been established I committed a crime. I haven't been convicted of a crime to be found not guilty of.
 

 THE COURT: All right. Thank you.
 

 Defendant's counsel then immediately argued that, based on the evidence presented, the trial court should find Defendant "insane and ... not guilty[.]" The State agreed with the recommendation of Defendant's counsel, but requested that the trial court "make this a dismissal
 
 with leave
 
 so that the State then is responsible and aware of any future actions as it relates to [Defendant]." (emphasis added).
 

 Following the hearing, the trial court concluded:
 

 [D]efendant has a serious mental illness, schizophrenia, was psychotic at the time of the alleged crimes on August 4, 2013 and due to her psychosis, was unable to understand the wrongfulness of her actions at the time they were allegedly committed.
 

 [D]efendant has a valid defense of insanity and the charges arising out of the occurrences on August 4, 2013 should be dismissed with leave as a matter of law.
 

 The trial court entered an order on 19 May 2016, which ordered "the charges against [D]efendant be dismissed with leave by the State based on the [trial court's] determination that under N.C.G.S. § 15A-959, [D]efendant was insane at the time the acts for which she is charged were committed." Defendant appeals.
 

 II.
 
 Appellate Review
 

 The State filed a motion to dismiss Defendant's appeal based upon its contention that no right of appeal exists from the order ruling that Defendant was NGRI. Defendant acknowledges that her only potential avenue for appellate review is for this Court to grant the petition for writ of
 
 certiorari
 
 , which she filed 25 January 2017. We grant Defendant's petition for writ of
 
 certiorari
 
 and deny the State's motion to dismiss.
 
 [1]
 
 We therefore address the merits of Defendant's appeal.
 

 *577
 
 III.
 
 Analysis
 

 In Defendant's first argument, she contends "the trial court erred and denied [her] constitutional right to the assistance of counsel when it allowed her lawyer to pursue a pre-trial insanity defense against her wishes," and requests that this Court "vacate
 
 *481
 
 the trial court's NGRI order and remand for appropriate proceedings." We agree.
 

 "This Court reviews alleged violations of constitutional rights
 
 de novo
 
 ."
 
 State v. Jones
 
 ,
 
 220 N.C. App. 392
 
 , 394,
 
 725 S.E.2d 415
 
 , 416 (2012) (citations omitted). As our Supreme Court has stated:
 

 The right to counsel in a serious criminal prosecution is guaranteed by the sixth amendment to the Constitution of the United States. The attorney-client relationship
 

 rests on principles of agency, and not guardian and ward. While an attorney has implied authority to make stipulations and decisions in the management or prosecution of an action, such authority is usually limited to matters of procedure, and, in the absence of special authority, ordinarily a stipulation operating as a surrender of a substantial right of the client will not be upheld.
 

 The attorney is bound to comply with her client's lawful instructions, "and her actions are restricted to the scope of the authority conferred." "No person can be compelled to take the advice of his attorney."
 

 State v. Ali
 
 ,
 
 329 N.C. 394
 
 , 403,
 
 407 S.E.2d 183
 
 , 189 (1991) (citations omitted).
 

 The following statute sets forth the requirements for a trial court's pretrial determination finding a defendant not guilty by reason of insanity:
 

 Upon
 
 motion of the defendant
 
 and with the consent of the State the [trial] court may conduct a hearing prior to the trial with regard to the defense of insanity at the time of the offense. If the [trial] court determines that the defendant has a valid defense of insanity with regard to any criminal charge, it may dismiss that charge, with prejudice, upon making a finding to that effect.
 

 N.C.G.S. § 15A-959(c) (emphasis added). Defendant argued at her hearing that she did not consent to any motion for a pretrial determination of NGRI:
 

 *578
 
 And I'd ask that you would enter-that you would deny an entry of a NGRI plea today before a proper hearing and proper trial to establish guilt because it hasn't been established I committed a crime. I haven't been convicted of a crime to be found not guilty of.
 

 Defendant also stated to the trial court: "But as far as [the defense of NGRI] being used in a trial, I have no problem with that. But to be used without a proper trial to dispute any evidence against me I feel like that would violate my rights." However, against Defendant's express wishes, Defendant's counsel moved for a pretrial determination of NGRI pursuant to N.C.G.S. § 15A-959(c), the State consented, and the trial court agreed-purportedly dismissing the charges against Defendant based upon its determination that she was NGRI. The trial court also entered "an order finding that [D]efendant ha[d] been found not guilty by reason of insanity of a crime and committ[ed her] to a Forensic Unit operated by the Department of Health and Human Services," until such time as Defendant should be released "in accordance with Chapter 122C of the General Statutes." N.C. Gen. Stat. § 15A-1321(b) (2015).
 

 A.
 
 Competency to Stand Trial
 

 After initially being found incompetent to assist in her defense, Defendant was found competent to proceed on 7 April 2016. Defendant agrees that she was competent to proceed on 7 April 2016.
 

 According to N.C. Gen. Stat. § 15A-1001 (2015):
 

 No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to
 
 assist in his defense in a rational or reasonable manner
 
 . This condition is hereinafter referred to as "incapacity to proceed."
 

 N.C.G.S. § 15A-1001(a) (emphasis added). As explained by this Court:
 

 "The test for capacity to stand trial is whether a defendant has capacity to comprehend his position, to understand the nature of the proceedings against him, to conduct his defense in a rational manner
 
 *482
 
 and to cooperate with his counsel[.]" "Evidence that a defendant suffers from mental illness is not dispositive on the issue of competency." Our Supreme Court has noted that
 
 *579
 
 a defendant does not have to be at the highest stage of mental alertness to be competent to be tried. So long as a defendant can confer with his or her attorney so that the attorney may interpose any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner. It is the attorney who must make the subtle distinctions as to the trial.
 

 State v. Coley
 
 ,
 
 193 N.C. App. 458
 
 , 463-64,
 
 668 S.E.2d 46
 
 , 50 (2008) (citations omitted). We therefore proceed with our analysis operating under the legal presumption that Defendant was "[ ]able to understand the nature and object of the proceedings against [her], to comprehend [her] own situation in reference to the proceedings, [and] to assist in [her] defense in a rational or reasonable manner." N.C.G.S. § 15A-1001(a).
 

 B.
 
 Defendant's Right to Choose Trial Strategy
 

 Although the 19 May 2016 order purports to have acquitted Defendant of the charges filed against her, we must still determine whether Defendant's rights were violated when the trial court proceeded with a pretrial hearing pursuant to N.C.G.S. § 15A-959(c), against her express wishes, upon the motion of her counsel and the consent of the State. Whether a competent defendant has the right to refuse to pursue a defense of NGRI is a question of first impression in North Carolina.
 

 1.
 
 Federal Courts
 

 A defendant's right to refuse a plea of NGRI has not always been decided consistently in other jurisdictions. In one of the seminal opinions addressing this issue, from the United States Court of Appeals for the D.C. Circuit, that Court initially held that "a defendant may not keep the issue of insanity out of the case altogether. He may, if he wishes, refuse to raise the issue of insanity, but he may not, in a proper case, prevent the court from injecting it."
 
 Whalem v. United States
 
 ,
 
 346 F.2d 812
 
 , 818 (D.C. Cir. 1965) (citations omitted),
 
 overruled by
 

 U.S. v. Marble
 
 ,
 
 940 F.2d 1543
 
 (D.C. Cir. 1991). However, the D.C. Circuit eventually overruled its decision in
 
 Whalem
 
 , in part because Congress had, post-
 
 Whalem
 
 , made NGRI an affirmative defense in federal courts, and thereby removed the affirmative burden of the State to prove a defendant's mental responsibility beyond a reasonable doubt in every trial.
 
 [2]
 

 Marble
 
 ,
 
 940 F.2d at 1546
 
 . The D.C. Circuit also recognized that "[n]o other federal court of appeals has imposed a duty upon the district court to raise the insanity defense;
 

 *580
 
 indeed, only a few have even considered the issue."
 

 Id.
 

 at 1545
 
 (citations omitted). The
 
 Marble
 
 Court further relied upon the following reasoning based upon two opinions of the United States Supreme Court:
 

 The [Supreme] Court has also held that the Sixth Amendment guarantees a defendant the right to conduct his own defense. In so doing the Court reaffirmed the "nearly universal conviction ... that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." The Court explained that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."
 

 The
 
 Whalem
 
 line of cases is in substantial tension with both
 
 Alford
 
 and
 
 Faretta
 
 insofar as it precludes a district court from simply deferring to the choice of a competent defendant not to plead insanity, and may at times require the court to override that choice.
 
 Alford
 
 stands clearly for the proposition that a court may defer to a defendant's strategic choice to accept criminal responsibility even if his actual culpability is neither proven nor admitted. This seriously undermines the
 
 Whalem
 
 rationale that the law does not countenance the punishment of a person whose crime has
 
 *483
 
 been proved beyond a reasonable doubt but whose mental responsibility (although not denied) is objectively in doubt.
 

 [T]o impose a particular defense upon an accused, in essence to force him to affirm that he is insane, makes not only appointed counsel but the defendant himself "an organ of the State." "Unless the accused has acquiesced...., the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not
 
 his defense
 
 ."
 

 Id
 
 . at 1546 (citations omitted). After noting "the Supreme Court's deference, expressed in
 
 Faretta
 
 and
 
 Alford
 
 , to a competent defendant's strategic decisions,"
 

 id.
 

 at 1547
 
 , the
 
 Marble
 
 Court stated that they could "no longer distinguish the decision not to plead insanity from other aspects of a defendant's right ... to direct his own defense[,]"
 

 id.
 

 , and concluded: "[W]e hold that a district court must allow a competent defendant to accept responsibility for a crime committed when he may have been
 
 *581
 
 suffering from a mental disease. Insofar as they hold to the contrary,
 
 Whalem
 
 and its progeny are overruled."
 
 Id
 
 .
 
 [3]
 

 2.
 
 North Carolina
 

 The United States Supreme Court has recognized the fundamental right of a Defendant to represent herself,
 
 without the assistance of counsel
 
 , and thereby make
 
 all
 
 trial decisions unrestrained by the intervention of a third party:
 

 The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make h[er] defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against h[er]," and who must be accorded "compulsory process for obtaining witnesses in h[er] favor." Although not stated in the Amendment in so many words, the right to self-representation-to make one's own defense personally-is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is [she] who suffers the consequences if the defense fails.
 

 The counsel provision supplements this design. It speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant-not an organ of the State interposed between an unwilling defendant and h[er] right to defend h[er]self personally. To thrust counsel upon the
 
 *582
 
 accused, against h[er] considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.
 

 Faretta v. California
 
 ,
 
 422 U.S. 806
 
 , 819-20,
 
 95 S.Ct. 2525
 
 , 2533-34,
 
 45 L.Ed.2d 562
 
 , 572-73 (1975) (citations omitted).
 

 In North Carolina, because NGRI is an affirmative defense that must be asserted by the defendant, it is the defendant's decision whether to pursue NGRI, and the State has no obligation to address the issue absent the defendant having properly asserted the defense. N.C.G.S. § 15A-959(a) ;
 
 State v. McDowell
 
 ,
 
 329 N.C. 363
 
 , 375,
 
 407 S.E.2d 200
 
 , 206-07 (1991). Relying on the Sixth Amendment, this Court has repeatedly held:
 

 *484
 
 "Like the decision regarding
 
 how to plead
 
 , the decision whether to testify
 
 is a substantial right belonging to the defendant
 
 . While strategic decisions regarding witnesses to call, whether and how to conduct cross-examinations, ... and what trial motions to make are ultimately the province of the lawyer,
 
 certain other decisions
 
 represent more than mere trial tactics and
 
 are for the defendant
 
 . These decisions include
 
 what plea to enter
 
 ,
 
 whether to waive a jury trial
 
 and whether to testify in one's own defense."
 

 State v. Chappelle
 
 ,
 
 193 N.C. App. 313
 
 , 332,
 
 667 S.E.2d 327
 
 , 338 (2008) (citations omitted) (emphasis added). Our Supreme Court has held:
 

 A defendant's right to plead "not guilty" has been carefully guarded by the courts. When a defendant enters a plea of "not guilty", he preserves two fundamental rights. First, he preserves the right to a fair trial as provided by the Sixth Amendment. Second, he preserves the right to hold the government to proof beyond a reasonable doubt.
 

 A plea decision must be made exclusively by the defendant. "A plea of guilty or no contest involves the waiver of various fundamental rights such as the privilege against self-incrimination, the right of confrontation and the right to trial by jury." Because of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences.
 

 *583
 
 This Court is cognizant of situations where the evidence is so overwhelming that a plea of guilty is the best trial strategy. However, the gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands. When counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.
 

 State v. Harbison
 
 ,
 
 315 N.C. 175
 
 , 180,
 
 337 S.E.2d 504
 
 , 507 (1985) (citations omitted). We recognize: "A claim of insanity is an affirmative defense to a crime and does not require a formal inquiry as set forth in N.C.G.S. § 15A-1022, even when a defendant decides to waive his right to plead not guilty."
 
 McDowell
 
 , 329 N.C. at 375, 407 S.E.2d at 206-07 (citation omitted). Nonetheless, our Supreme Court has stated: "It is settled law in this State that when ... the defendant interposes a plea of insanity, he says by this plea that he did the killing, but the act is one for which he is not responsible."
 
 State v. Bowser
 
 ,
 
 214 N.C. 249
 
 , 254-55,
 
 199 S.E. 31
 
 , 34 (1938) (citations omitted).
 
 [4]
 
 More importantly, a pretrial determination of NGRI pursuant to N.C.G.S. § 15A-959(c) eliminates a defendant's ability to demand the constitutional rights associated with a trial in the same manner as does a guilty plea. The United States Supreme Court recognized:
 

 A defendant who stands trial is likely to be presented with choices that entail relinquishment of the same rights that are relinquished by a defendant who pleads guilty: He will ordinarily have to decide whether to waive his "privilege against compulsory self-incrimination" by taking the witness stand; if the option is available, he may have to decide whether to waive his "right to trial by jury," and, in consultation with counsel, he may have to decide whether to waive his "right to confront [his] accusers" by declining to cross-examine witnesses for the prosecution. A defendant who pleads not guilty, moreover, faces still other strategic choices: In consultation with his attorney, he may be
 
 *584
 
 called upon to decide, among other things, whether (and how) to put on a defense and whether to raise one or more affirmative defenses. In sum,
 
 all
 
 criminal defendants-not merely those who plead
 
 *485
 
 guilty-may be required to make important decisions once criminal proceedings have been initiated. And while the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial. (The decision to plead guilty is also made over a shorter period of time, without the distraction and burden of a trial.).
 

 Godinez v. Moran
 
 ,
 
 509 U.S. 389
 
 , 398-99,
 
 113 S.Ct. 2680
 
 , 2686,
 
 125 L.Ed.2d 321
 
 , 331-32 (1993) (citations omitted).
 

 Nor do we think that a defendant who waives his right to the assistance of counsel must be more competent than a defendant who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights.
 

 Id
 
 . at 399,
 
 113 S.Ct. at 2686
 
 ,
 
 125 L.Ed.2d 321
 
 at 332.
 
 [5]
 

 Though
 
 Harbison
 
 dealt with the consequences of a defendant's attorney admitting defendant's guilt to certain charges without the defendant's consent, in light of
 
 Godinez
 
 and other precedent, we find the following reasoning in
 
 Harbison
 
 applicable to the present case:
 

 This Court is cognizant of situations where the evidence is so overwhelming that a plea of guilty [or NGRI] is the best trial strategy. However, the gravity of the consequences demands that the decision to plead guilty [or NGRI] remain in the defendant's hands. When counsel admits his client's guilt [or moves for a pretrial determination of NGRI] without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. .... Counsel in such
 
 *585
 
 situations denies the client's right to have the issue of guilt or innocence decided by a jury.
 

 Harbison
 
 ,
 
 315 N.C. at 180
 
 ,
 
 337 S.E.2d at 507
 
 (citation omitted).
 

 By ignoring Defendant's clearly stated desire to proceed to trial rather than moving for a pretrial verdict of NGRI pursuant to N.C.G.S. § 15A-959(c), the trial court allowed-absent Defendant's consent and over her express objection-the "waiver" of her fundamental rights, including the right to decide "what plea to enter, whether to waive a jury trial and whether to testify in [her] own defense[,]"
 
 Chappelle
 
 , 193 N.C. App. at 332,
 
 667 S.E.2d at 338
 
 (citations omitted), as well as "the right to a fair trial as provided by the Sixth Amendment[,] ... the right to hold the government to proof beyond a reasonable doubt[,] ... [and] the right of confrontation[.]"
 
 Harbison
 
 ,
 
 315 N.C. at 180
 
 ,
 
 337 S.E.2d at 507
 
 (citations omitted). These rights may not be denied a competent defendant, even when the defendant's choice to exercise them may not be in the defendant's best interests. In the present case, Defendant had the same right to direct her counsel in fundamental matters, such as what plea to enter, as she had to forego counsel altogether and represent herself, even when Defendant's choices were made against her counsel's best judgment. We hold that, because the decision of whether to plead not guilty by reason of insanity is part of the decision of "what plea to enter," the right to make that decision "
 
 is a substantial right belonging to the defendant
 
 ."
 
 Chappelle
 
 ,
 
 193 N.C. App. at 332
 
 ,
 
 667 S.E.2d at 338
 
 (emphasis added).
 
 [6]
 
 Therefore, by allowing Defendant's counsel to seek and accept a pretrial disposition of NGRI, the trial court "deprived [Defendant] of [her] constitutional right to conduct [her] own defense."
 

 *486
 

 Faretta
 
 ,
 
 422 U.S. at 836
 
 ,
 
 95 S.Ct. at 2541
 
 ,
 
 45 L.Ed.2d at 582
 
 .
 
 [7]
 
 We are not called upon to determine how that right should be protected when asserted by a defendant's counsel at trial but, at a minimum, a defendant's affirmative declaration that the defendant does not wish to move for a pretrial determination of NGRI must be respected.
 
 [8]
 

 *586
 
 The State argues that Defendant cannot show prejudice because she is subject to periodic hearings, the first of which would have occurred within fifty days of her involuntary commitment pursuant to N.C.G.S. § 15A-959(c) and N.C.G.S. § 1321(b).
 
 See
 
 N.C. Gen. Stat. § 122C-268.1(a) (2015). However, because the trial court found Defendant NGRI, Defendant was not only automatically involuntarily committed pursuant to N.C.G.S. § 15A-1321(b), she was also subject for the entirety of her commitment to the more onerous conditions specific to commitment pursuant to N.C.G.S. § 15A-1321(b) that are not applicable to ordinary civil commitment. For example, the burdens of proof to demonstrate that a defendant is no longer mentally ill and dangerous are different, depending on whether the defendant was civilly committed or committed pursuant to NGRI. N.C. Gen. Stat. § 122C-271 (2015).
 
 [9]
 
 The differences between civil involuntary commitment and commitment pursuant to a finding of NGRI are substantial and prejudicial to the committed individual if that person is subject to the requirements of commitment pursuant to NGRI, even if that person meets the requirements for civil involuntary commitment.
 

 As Defendant argues in her brief, because she was found competent to assist her counsel and stand trial, she should have been allowed to weigh "(1) the risk of a conviction and lengthy but definite prison sentence, versus; (2) the risk of an NGRI verdict and indefinite commitment, versus; (3) the possibility of an outright acquittal, and ultimately decide that pursuit of a jury trial was the most advantageous strategy." The denial of Defendant's right to counsel advocating for her wishes, which resulted in the denial of Defendant's right to trial and her indefinite involuntary commitment pursuant to N.C.G.S. § 15A-959(c) and N.C.G.S. § 1321(b), constituted reversible error.
 

 C.
 
 Double Jeopardy
 

 Defendant argues that, as a result of the violation of her Sixth Amendment rights, "the trial court's NGRI order must be vacated." Normally, when this Court vacates a defendant's judgment the proper course of action is to remand the matter for a new trial. However, in certain circumstances, remand for a new trial is not appropriate because retrial would violate the defendant's double jeopardy rights. The United
 
 *587
 
 States Supreme Court reviewed its double jeopardy jurisprudence in
 
 Evans v. Michigan
 
 :
 

 It has been half a century since we first recognized that the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is "based upon an egregiously erroneous foundation."
 
 Fong Foo v. United States
 
 ,
 
 369 U.S. 141
 
 [
 
 82 S.Ct. 671
 
 ,
 
 7 L.Ed.2d 629
 
 (1962) ] [.] A mistaken acquittal is an acquittal nonetheless, and we have long held that "[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." Our cases have applied
 
 Fong Foo 's
 
 principle broadly. An acquittal is unreviewable whether a judge directs a jury to return a verdict of acquittal, or forgoes that formality by entering a judgment of acquittal herself. And an acquittal precludes
 
 *487
 
 retrial even if it is premised upon an erroneous decision to exclude evidence; a mistaken understanding of what evidence would suffice to sustain a conviction; or a "misconstruction of the statute" defining the requirements to convict. In all these circumstances, "the fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character."
 

 Evans v. Michigan
 
 ,
 
 568 U.S. 313
 
 , 318,
 
 133 S.Ct. 1069
 
 , 1074,
 
 185 L.Ed.2d 124
 
 , 133 (2013) (citations omitted).
 

 Certain state appellate courts have treated NGRI determinations as different than "acquittals" as understood in
 
 Evans
 
 , and determined that an erroneous NGRI determination does not implicate double jeopardy.
 
 See, e.g.,
 

 Gorthy,
 
 145 A.3d at 158 (reversing and remanding for a new trial on stalking charge because the defendant was forced to present NGRI defense against her will, and she was found NGRI);
 
 Handy II
 
 , 73 A.3d at 439 (rejecting the defendant's argument that, because his acquittal based upon NGRI was vacated, double jeopardy prevented the state from trying him on the underlying charges);
 
 Handy I
 
 , 25 A.3d at 1169 ("Most importantly for our purposes, double jeopardy did not attach in
 
 Lewis
 
 , because the judgment there had declared the defendant not guilty by reason of insanity.");
 
 see also, e.g.,
 

 State ex rel. Koster v. Oxenhandler
 
 ,
 
 491 S.W.3d 576
 
 , 606 (Mo. Ct. App. 2016) ("The import of our disposition is to vacate [the petitioner's] assertion of, and the State's and the underlying trial court's acceptance of, the NGRI defense;
 

 *588
 
 to vacate the underlying trial court's July 9, 2007 order and judgment of commitment; and to return [the petitioner] to the procedural position he was in immediately prior to July 9, 2007.");
 
 State v. Lewis
 
 ,
 
 188 S.W.3d 483
 
 , 490 (Mo. Ct. App. 2006) (double jeopardy does not attach to judgment of NGRI later found invalid);
 
 State v. Kent
 
 ,
 
 515 S.W.2d 457
 
 , 460-61 (Mo. 1974) (holding that a verdict of not guilty by reason of mental disease or defect that is later found to be invalid does not place the defendant in jeopardy of being found guilty).
 

 In
 
 Kent
 
 , the Supreme Court of Missouri stated: "We do not believe
 
 Fong Foo
 
 ... controls our disposition of this case because it involved an acquittal on the general question of guilt, and not, as here, on the basis of the defense of mental disease and defect."
 
 Id
 
 . at 461. The United States Supreme Court denied the petition for writ of
 
 certiorari
 
 filed by the defendant in
 
 Kent
 
 ,
 
 Ex parte Kent
 
 ,
 
 414 U.S. 1077
 
 ,
 
 94 S.Ct. 596
 
 ,
 
 38 L.Ed.2d 484
 
 (1973) ; however, three justices dissented, arguing the defendant's double jeopardy argument should be heard because the defendant's "double jeopardy claim is properly reviewable at this point since his objection to standing trial has been rejected and petitioner has been ordered to stand trial in accordance with the mandate of the State's highest court."
 
 Id
 
 . at 1078,
 
 94 S.Ct. 596
 
 at 597,
 
 38 L.Ed.2d 484
 
 at 485.
 

 Whether reversal of a judgment of NGRI implicates the double jeopardy clause has not been settled by the United States Supreme Court, and we find no North Carolina opinion on point. However, because of the particular facts of the case before us, we find that we do not have to answer this constitutional question broadly.
 
 State v. Goodman
 
 ,
 
 298 N.C. 1
 
 , 20,
 
 257 S.E.2d 569
 
 , 582 (1979) (constitutional questions will not be decided if there is an alternative basis upon which the decision can be made).
 

 D.
 
 N.C.G.S. § 15A-959(c) and the Trial Court's Order
 

 The language of N.C.G.S. § 15A-959(c) is discretionary, not mandatory:
 

 Upon motion of the defendant and with the consent of the State the [trial] court may conduct a hearing prior to the
 
 *488
 
 trial with regard to the defense of insanity at the time of the offense. If the [trial] court determines that the defendant has a valid defense of insanity with regard to any criminal charge, it may dismiss that charge, with prejudice, upon making a finding to that effect.
 

 N.C.G.S. § 15A-959(c). The trial court is not
 
 required
 
 to conduct a hearing on a defendant's potential defense of insanity, even upon a motion
 
 *589
 
 by the defendant and consent of the State.
 
 Id
 
 . (emphasis added) ("the [trial] court
 
 may
 
 conduct a hearing prior to the trial with regard to the defense of insanity"). Further, even if the trial court conducts a hearing, and "determines that the defendant has a valid defense of insanity[,]" it may still decide to
 
 deny
 
 the defendant's motion for a pretrial determination of NGRI.
 
 Id
 
 . (emphasis added) ("[i]f the [trial] court determines that the defendant has a valid defense of insanity with regard to any criminal charge, it
 
 may
 
 dismiss that charge, with prejudice, upon making a finding to that effect"). Therefore, unlike a defendant's right to a fair trial, a defendant has no right to either a pretrial determination of NGRI, nor the right to have her charges dismissed even if the trial court makes a pretrial determination of NGRI. However, the language of N.C.G.S. § 15A-959(c) suggests that, if a trial court decides in its discretion to dismiss a defendant's charges based upon a pretrial finding of NGRI, it should do so with prejudice.
 
 [10]
 

 Id
 
 . ("it may dismiss that charge, with prejudice").
 

 In the present case, the trial court used the following language in the decretal portion of its 19 May 2016 order: "That the charges against [D]efendant be dismissed with leave by the State based on the [trial c]ourt's determination that under N.C.G.S. § 15A-959, [D]efendant was insane at the time the acts for which she is charged were committed." This language makes clear the trial court made a determination pursuant to N.C.G.S. § 15A-959(c) that Defendant was legally "insane" at the time she allegedly committed the crimes; however, that determination alone did not compel the trial court to dismiss Defendant's charges and preclude Defendant from proceeding to trial.
 

 Id.
 

 The trial court did purport to dismiss Defendant's charges; however, the trial court did
 
 not
 
 dismiss Defendant's charges "with prejudice" as contemplated by N.C.G.S. § 15A-959(c).
 

 We need not, and therefore do not, decide whether the trial court had the authority to dismiss Defendant's charges "with leave;" however, the practical effect is the same. The 19 May 2016 order did not constitute an "acquittal" to which jeopardy attached. In light of the peculiar and singular nature of a pretrial NGRI hearing, and on the facts before us, where the trial court purported to dismiss Defendant's charges, but with leave we hold that the order in the present case was more akin to a "procedural dismissal" than a "substantive ruling" as contemplated by
 
 *590
 

 Evans
 
 ,
 
 568 U.S. at 319-20
 
 ,
 
 133 S.Ct. at 1075
 
 ,
 
 185 L.Ed.2d at 134
 
 . As such, double jeopardy concerns do not prevent this Court from granting the relief Defendant requests, which is to "vacate the trial court's NGRI order and remand for appropriate proceedings."
 
 Br26
 

 In light of the substantial amount of time that has passed since Defendant's last competency hearing, upon remand the trial court shall order a new competency hearing. If Defendant is found not competent to stand trial, the trial court shall proceed in accordance with Chapter 122C and other relevant sections of our General Statutes. If, or when, Defendant is found competent to stand trial, she shall be afforded all the constitutional rights of a competent defendant, including final decision-making authority over what plea to enter, and whether or not to pursue the defense of NGRI at trial, or at a pretrial hearing pursuant to N.C.G.S. § 15A-959(c).
 

 VACATED AND REMANDED.
 

 Judges TYSON and INMAN concur.
 

 [1]
 

 Recognizing the complicated issues concerning the appealability of the 19 May 2016 order, we grant to the extent necessary, if at all, Defendant's petition pursuant to the authority granted this Court by N.C. Gen. Stat. § 7A-32(c) (2015) and Rule 2 of the North Carolina Rules of Appellate Procedure.
 
 See
 

 State v. Ledbetter
 
 , --- N.C. App. ----,
 
 794 S.E.2d 551
 
 (2016).
 

 [2]
 

 Insanity is also an affirmative defense in North Carolina that must be asserted prior to trial. N.C.G.S. § 15A-959(a).
 

 [3]
 

 Marble
 
 has been followed in some jurisdictions, and rejected-in whole or in part-in others.
 
 See
 

 United States v. Wattleton
 
 ,
 
 296 F.3d 1184
 
 , 1194 (11th Cir. 2002) ("we agree with [the defendant] that whether to raise the insanity defense is a decision for the defendant and his counsel");
 
 Petrovich v. Leonardo
 
 ,
 
 229 F.3d 384
 
 , 386 (2d Cir. 2000) ("[t]he decision to assert an affirmative defense is akin to other, fundamental trial decisions, such as the decision to plead to a lesser charge or to assert a plea of insanity");
 
 State v. Gorthy
 
 ,
 
 226 N.J. 516
 
 ,
 
 145 A.3d 146
 
 , 157 (2016) ("Accordingly, if the trial court has made a finding of competency, it should not interpose its own judgment for that of the defendant, but should respect the defendant's choice [to reject a defense of NGRI].");
 
 but see
 

 People v. Laeke
 
 ,
 
 271 P.3d 1111
 
 , 1116 (Colo. 2012) (statute allowing a competent defendant's counsel to seek NGRI over the defendant's objection is constitutional so long as the trial court determined that the defendant's competence was not sufficient to independently make the decision to abandon NGRI defense).
 

 [4]
 

 However, a defendant is permitted to argue both factual innocence and innocence due to a lack of capacity to have formed criminal intent simultaneously at trial.
 
 See
 

 State v. Cooper
 
 ,
 
 286 N.C. 549
 
 , 591,
 
 213 S.E.2d 305
 
 , 332 (1975) (Sharp, C.J., dissenting),
 
 disavowed in part on other grounds by
 

 State v. Leonard
 
 ,
 
 300 N.C. 223
 
 ,
 
 266 S.E.2d 631
 
 (1980).
 

 [5]
 

 Godinez
 
 recognizes that whereas a finding of competence to stand trial establishes a defendant's competence to waive fundamental rights at trial and competence to make critical decisions such as whether to raise affirmative defenses, and waiver of certain rights such as the waiver of right to counsel or the right to trial by pleading guilty, it also requires assurances that the defendant's waiver is "knowing and voluntary."
 
 Godinez
 
 ,
 
 509 U.S. at 400
 
 ,
 
 113 S.Ct. at 2687
 
 ,
 
 125 L.Ed.2d at 333
 
 (citations omitted).
 

 [6]
 

 For a thorough and thoughtful review of the issues before us,
 
 see
 

 State v. Handy
 
 ,
 
 421 N.J. Super. 559
 
 ,
 
 25 A.3d 1140
 
 (2011) ("
 
 Handy I
 
 ");
 
 State v. Handy
 
 ,
 
 215 N.J. 334
 
 ,
 
 73 A.3d 421
 
 (2013) ("
 
 Handy II
 
 "); and
 
 State v. Gorthy
 
 ,
 
 226 N.J. 516
 
 ,
 
 145 A.3d 146
 
 (2016).
 

 [7]
 

 See also
 

 Gorthy
 
 ,
 
 145 A.3d at 157
 
 , in which the Supreme Court of New Jersey overruled prior opinions allowing the trial court to impose an insanity defense over a competent defendant's informed objections.
 

 [8]
 

 The trial court is, of course, encouraged to conduct a more formal inquiry in the nature of that set forth in N.C. Gen. Stat. § 15A-1022 (2015) to insure a defendant fully understands the consequences of the defendant's decision.
 

 [9]
 

 See also
 
 , e.g., N.C. Gen. Stat. § 122C-62(b) (2015) ("[E]ach adult client who is receiving treatment or habilitation in a 24-hour facility at all times keeps the right to: .... (4) Make visits outside the custody of the facility unless: a. Commitment proceedings were initiated as the result of the client's being charged with a violent crime ... and the respondent was found not guilty by reason of insanity or incapable of proceeding[.]").
 

 [10]
 

 Because we are not required to do so in this opinion, we do not make any holding concerning whether N.C.G.S. § 15A-959(c) might allow dismissal without prejudice in certain circumstances, or in the discretion of the trial court.